Helen M. BUSHELL, Plaintiff-Appellant,

v.

Janice L. SCHEPP, Successor Administratrix Ad Litem of the Estate of Charles J. Bushell, Deceased, Defendant-Respondent.

No. 42737.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 3, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 13, 1980.

---

Stuart J. Radloff, Friedman, Fredericks & Radloff, Clayton, for plaintiff-appellant.

Janice L. Schepp, pro se.

Anderson, Preuss & Zwibelman, Clayton, for defendant-respondent.

GUNN, Judge.

The issue in this appeal concerns a mother's right to continue receiving child support payments provided in a dissolution of marriage proceeding from the estate of the father after his death. The probate division of the circuit court denied the mother's claim for continued payments, and she has appealed. We affirm.

The marriage ligatures' of Charles and Helen Bushell were riven by court order on November 20, 1978 with the custody of their two children, ages sixteen and thirteen, awarded to Mrs. Bushell. The dissolution decree and separation agreement referred to in the decree provided that Mr. Bushell was to pay Mrs. Bushell child support of $400 per month for each child during minority. The separation agreement also provided that the two children were to remain as beneficiaries on life insurance policies covering Mr. Bushell's life, and Mr. Bushell agreed that the children would share in his estate equally if he should die during the minority of the youngest child. Mr. Bushell died on July 9, 1979, less than eight months after the dissolution. His will designated his two children as the sole beneficiaries of his estate. Child support payments were fully current at the time of his death.

Mrs. Bushell filed claim against Mr. Bushell's estate for a continuation of the child support payments. The probate division of the circuit court denied the claim. Its conclusion was that any obligation to continue child support payments must be contained in the separation agreement or some contractual obligation. Its decision was based on the common law indited in *Gardine v.*

*Cottey*, 360 Mo. 681, 710, 230 S.W.2d 731, 750 (banc 1950), that a parent's obligation for child support terminates on the death of the parent. The probate division also found that, whether or not it could, the separation agreement did not manifest an intention to obligate Mr. Bushell's estate to continue payment to Mrs. Bushell.

Mrs. Bushell asserts two points of alleged error in her appeal: (1) that the effect of the common law of *Gardine v. Cottey*, was repudiated by the enactment of § 452.370, RSMo 1978, allegedly providing for termination of child support only by emancipation; (2) that the separation agreement was unambiguous in providing that child support was to continue "during the minority of the said minor children"; hence, that it was to continue beyond the death of Mr. Bushell.

In the keystone case of *Gardine v. Cottey*, the Missouri Supreme Court specifically held that provisions for support of minor children contained in divorce decrees as to payments to become due in the future do not constitute a valid claim against the estate of a deceased father. *Id.* at 750. If *Gardine v. Cottey* is still the law, it is squarely on point as to the dispositive issue in this case, and Mrs. Bushell's claim against Mr. Bushell's estate for continued child support payments was properly denied.

As an offset to *Gardine v. Cottey*, Mrs. Bushell advances § 452.370 RSMo 1978, which provides:

1. Except as otherwise provided in subsection 6 of section 452.325, the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.

2. Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

3. Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child.

She argues that whereas subsection (2) provides specifically that maintenance payments terminate upon the death of either party, subsection (3), dealing with child support, does not mention the effect of the death of either party. Thus, she syllogizes, the legislature intended that the contingency mentioned in subsection (3)—emancipation of the child—is the "only" event which will terminate the obligation to pay child support and the common law of *Gardine* is abrogated. This argument is patently fenestrated. Mrs. Bushell's postulation would logically mean that even the death of the minor child would not terminate the child support obligation unless a clause to that effect appeared in the decree or separation agreement. The word "only" does not appear in the statute, nor is there any other language of exclusivity. The obvious purpose of subsection (3) is to make it absolute that, absent express provisions to the contrary in the decree or separation agreement, the obligation ends upon emancipation and does not automatically continue to age twenty-one. Also, this section would conceivably permit child support to be terminated automatically at an earlier time, at age sixteen, for example, if such is found conscionable and is expressly provided for in the decree or separation agreement. Moreover, it should be noted that the statute does not specify what the age of majority is for child support purposes. Case law fixes the age at twenty-one, even though majority is attained at eighteen for most other purposes. *Biermann v. Biermann*, 584 S.W.2d 106 (Mo.App.1979). The foregoing bolsters our view that the statute is *not* exhaustive and exclusive on the subject of termination of child support. Rather, the statute simply does not address the question of whether the parent's death terminates the child support obligation.

It is a fundamental precept of statutory interpretation that the legislature is presumed to act with knowledge of the

subject matter and existing law, *Wilson v. McNeal*, 575 S.W.2d 802 (Mo.App.1978), which would include the law regarding continuation of child support payments interdicted by *Gardine v. Cottey*. We believe that if the legislature had intended to change the existing law to make decretal child support binding on the obligated party's estate, it would have clearly so stated, not in the abstruse manner which Mrs. Bushell suggests.

■ Although the legislative history of Missouri's Dissolution of Marriage Act is unavailable, it is apparent that it has its roots in the Uniform Marriage and Divorce Act. At least because of substantial language similarities, a reasonable conclusion is that the uniform act served as a basic reference point for Missouri's Dissolution Act. For example, § 452.370, RSMo 1978 and § 316 of the uniform act contain identical language except to the extent that § 316(c) of the uniform act provides that: "[P]rovisions for the support of a child are terminated by emancipation of the child but not by the death of a parent obligated to support the child. When a parent obligated to pay support dies, the amount of support may be modified, revoked, or committed to a lump sum payment, to the extent just and appropriate in the circumstances." The foregoing language of the Uniform Marriage and Divorce Act, which would have changed the impact of *Gardine*, is glaringly absent from § 452.370 of Missouri's laws—a clear indication that the common law of *Gardine* was not modified by the Missouri legislature.

■ Mrs. Bushell's second point is that the separation agreement provided that child support payments were to continue beyond the death of Mr. Bushell. At the outset, we note that *Gardine* involved only a decretal obligation and did not make any determination regarding any contractual obligation. *Id.* at 747. This distinction is noted in *Fower v. Fower Estate*, 448 S.W.2d 585, 587 (Mo.1970), a case which follows

*Gardine* in disallowing future child support claims against a deceased parent. Although Mr. Bushell's administratrix ad litem suggests that no binding contract may be made for child support payments beyond the death of the obligated parent, citing *Kennedy v. Kennedy*, 575 S.W.2d 833, 835 (Mo.App.1978), we find that there is no binding contract for such payments here. Thus *Kennedy* is not felicitous.[1] In any event, if a separation agreement is to obligate a deceased parent's estate for continuing child support payments, it should do so with elucidation, not through the strained implication urged by Mrs. Bushell.

The agreement under consideration undertakes to "settle all of their [Bushells'] property rights, rights to maintenance, attorney's fees and costs" in the event of a dissolution decree. The portion of the agreement treating child support requires Mr. Bushell to make payments each month "during the minority of the said children or until otherwise ordered by this court". The latter proviso indicates that the parties were aware that the dissolution court has continued power to modify child support amounts under § 452.370(1), RSMo 1978. But there is no mention in this paragraph of what is to happen upon Mr. Bushell's death; there is no language expressly obligating his estate, heirs, executors, or administrators. *Cf. Jenkins v. Jenkins*, 257 S.W.2d 250, 252 (Mo.App.1953) (separation agreement expressly bound husband's estate to payment of college tuition and other expenses).

Mrs. Bushell maintains that the language dealing with child support is unambiguous and clearly indicates that the obligation to pay was to continue during the minority of the children and that it was error for the trial court to look to other parts of the separation agreement in order to determine the parties' intent. But the fact that the agreement recites that child support is to be paid "during the minority" of the children does not necessarily imply that the parties

1. This is not to say that a separation agreement cannot bind parents to obligations which the dissolution court declines or lacks jurisdiction to impose. *See e. g. Houston v. Snyder*, 440 S.W.2d 156, 160 (Mo.App.1969); *Jenkins v. Jenkins*, 257 S.W.2d 250, 252 (Mo.App.1953).

intended the obligation to continue after Mr. Bushell's death. It, at least, does not speak with the clarity it must to bind his estate for those payments.

 We agree with the probate division that the agreement as a whole tends to show that the parties intended child support payments to cease upon Mr. Bushell's death. The only other sections of the agreement having any concern with Mr. Bushell's death are paragraphs six and eight. Paragraph six mentions that the children remain as beneficiaries on certain life insurance policies on the father's life. Insurance benefits would normally be viewed as a substitute for support, not as an additional payment. *Cf. Mahaffey v. First National Bank*, 231 Miss. 798, 97 So.2d 756 (1957) (separation agreement requiring father to maintain life insurance policy for benefit of child tends to show that parties thought child support ceased at father's death).

Paragraph eight provides:

Respondent [Mr. Bushell] agrees and hereby covenants that said minor children shall share equally in the estate of the Respondent should he die during the minority of the youngest of the said two minor children notwithstanding any Last Will and Testament or Codicil of the Respondent to the contrary.

While it is possible that the parties could have agreed to this provision in addition to child support after death, we believe that its usual purpose in a separation agreement would be to ensure that the child has some assets available to replace the loss of child support payments. And in this case, Mr. Bushell did by his will devise his entire estate to his two children.

The agreement does not contain language clearly binding Mr. Bushell's estate to continue child support payments to Mrs. Bushell, and we find no reversible error in the probate division's decision.

Judgment affirmed.

PUDLOWSKI, P. J., and WEIER, J., concur.