Wendell C. SNOWDEN, Appellant,

v.

NORTHWEST MISSOURI STATE UNI-
VERSITY and William F. Phares, Jr.,
President of the Board of Regents of
Northwest Missouri State University,
and E. D. Geyer; Mary Linn; Alfred
McKerny; J. Raymond Speckman;
James S. Stubbs; and John M. Yeaman;
Members of said Board of Regents, all
individually and in their official capaci-
ties, and Robert P. Foster, President of
said University; Charles Thate, Provost
and Acting Vice-President for Academic
Affairs thereof, John Mees, Assistant
Provost and Acting Dean of the College
thereof, and Leon F. Miller, Dean of
Graduate Studies, all individually and in
their official capacities, and Morton R.
Kenner, Chairman of the Department of
Mathematical Sciences of Northwest
Missouri State College, both in his indi-
vidual and official capacity, Respon-
dents.

No. KCD 30431.

Missouri Court of Appeals,
Western District.

Sept. 29, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 27, 1981.

Application to Transfer Denied
Dec. 14, 1981.

Irving Achtenberg and Irvin V. Belzer, Kansas City, for appellant.

Max W. Foust and E. Wayne Taff, Kansas City, for respondents.

Before SHANGLER, P. J., and SWOFFORD and CLARK, JJ.

CLARK, Judge.

This case, on recent reassignment to the writer, is an action for compensatory and

punitive damages by Wendell C. Snowden, formerly employed as an assistant professor at Northwest Missouri State University. In the trial court, the defendants prevailed on summary judgment and Snowden appeals.

In a laboriously detailed two-count petition subsequently enhanced by a third count added by amendment, Snowden claimed aggrievement because his teaching contract was not renewed after the 1975–1976 school year and because he failed to achieve tenure status. The first count was premised on contract, procedural and substantive due process violations and sought relief against the school and its board of regents. The second count was against defendant Kenner alone and was based on alleged interference by Kenner with the business relationship between Snowden and the university intentionally and maliciously pursued. The third count, essentially repeating the claims of the first, alleged violations of Snowden's rights to property and process protected under 42 U.S.C. § 1983, and asked attorney fees.

Defendant Kenner answered and counterclaimed asking damages of Snowden on the ground that the personal action brought against Kenner was an abuse of civil process. The other defendants answered and all moved for summary judgment based on the pleadings and admitted facts developed in pre-trial discovery. Collectively, the defendants asserted that no material facts were in dispute and that Snowden presented no cause of action and no justiciable controversy. Snowden reciprocated with a motion for partial summary judgment on his claim that his employment contract had been terminated with less than the required advance notice.

The judgment from which this appeal is taken sustained defendants' summary judgment motions, overruled Snowden's motion for partial summary judgment and entered final judgment in favor of defendants and against Snowden as to all counts of his petition. The counterclaim of Kenner was dismissed without prejudice.

Shorn of their prolixity, Snowden's points on appeal assert trial court error (1) in denying Snowden's motion for partial summary judgment because uncontroverted facts establish that the university breached the employment contract by terminating Snowden without requisite notice, and (2) in entering summary judgment for defendants on the issue of considering Snowden for tenure status because the relevant facts were in dispute. Snowden also argues that a viable personal claim remained against Kenner.

I.

The Employment Termination Issue

In this aspect of the case, Snowden based a claim for breach of contract on his entitlement to twelve months advance notice of termination of his teaching employment. Although acknowledging that notice was given and received, he contends that notification was untimely and that the university was therefore obligated to continue his employment for an additional year. With counteropposing motions for summary judgment, all parties asserted below and they do not contend otherwise here, that the relevant facts were not in dispute. The record confirms this assumption, the facts appearing in the pleadings, interrogatory answers and exhibits of record. If the facts were indeed sufficient to postulate the issue, it must follow that either Snowden was or the defendants were entitled to judgment on this phase of the case. We conclude that the judgment was correct as entered.

Snowden was first employed by the university in August 1970 and, by the fall school term in 1974 when the events relevant to this case occurred, he was entering upon his fifth year of employment. The formal terms of employment for all faculty at the university appear in the Faculty Handbook. That document, Revision August 28, 1972, was attached to Snowden's petition and forms the basis for his claim that he was contractually entitled to notice that his teaching employment would not be renewed. The parties here agree that the handbook formed a part of the agreement

for Snowden's employment but they dispute interpretation of the notice provision.

The handbook designates several classifications of teacher employment, among which and relevant here are faculty on "Regular Appointment" and on "Tenure Appointment." Although, according to the handbook, all teachers are employed for the academic year, the significance of the improved status of tenure, when attained, is that annual contract renewal is assured, absent termination for cause after notice and hearing. A teacher on regular appointment, however, has no assurance of re-employment for succeeding years, there being no requirement that cause be shown for non-renewal of a teaching contract for faculty serving on regular appointment. This uncertainty is ameliorated to some extent by the notice provision on which the dispute here centers.

It is agreed that Snowden was a teacher on regular appointment subject to non-renewal of his employment as indicated above. Under the provisions of the Faculty Handbook, however, inaction by the university results in contract renewal for faculty on regular appointment to a maximum of seven successive years. In the language of the handbook, an instructor hired by the university on regular appointment "can assume re-employment unless he is notified otherwise." Assuming the entitlement of the university to end Snowden's employment by notice to this effect, the issue is when notification was required to be given.[1]

On June 21, 1975, Snowden received a letter dated the previous day from the university president informing Snowden that he would not be re-employed beyond the 1975–1976 academic year. The notice also made reference to paragraph 3a(3) of the handbook hereafter quoted. On July 1, 1975, a second letter, of apparently formal content, confirmed Snowden's salary for the 1975–1976 year, set the dates of the academic calendar as August 25, 1975 to May

13, 1976 and stated that the salary as established would be paid in ten equal installments. There is here no dispute as to the amount of Snowden's salary for the 1975–1976 period or that the salary was fully paid.

According to the handbook, all members of the faculty are employed for the academic year and are paid their salary in ten payments—"September through June." Summer employment is not assumed or guaranteed. A summer school session is contingent on availability of funds and a need for instruction services. If a teacher is hired for the summer session, he is paid an increment of "20% of the salary for the academic year." Snowden was not employed for a summer session in 1976 and he was paid his 1975–1976 salary in monthly installments from September 1975 through June 1976. The last actual services he rendered were on May 13, 1976 when the spring 1976 semester ended.

Pertinent portions of the Faculty Handbook relevant to re-employment or termination of faculty on regular appointment are as follows:

"3. The following policies apply to a faculty member on regular appointment in terms of re-employment or termination of employment.

a. A regular appointment faculty member may be notified of termination of employment without embarrassment to either party under the following conditions:

    *     *     *     *     *     *

(3) After the second year of employment, notification is to be presented in writing at least twelve calendar months prior to termination of contract.

    *     *     *     *     *     *

c. A faculty member on regular appointment will receive a notification

---

1. There is no issue here as to whether cause was alleged or demonstrated for termination of Snowden's employment. Both the Faculty Handbook and the statutes, § 174.150, RSMo 1978, describe the format of removal or suspension proceedings including notice of written charges and hearing. Some confusion in this case has resulted from indiscriminate use of the words non-renewal and termination.

for re-employment by March 15 along with any special conditions that may apply. If appropriations have been approved, the salary arrangements will also be indicated on March 15. If not approved by March 15, salary specifications will be released to the faculty member as soon as possible after the budget has been established."

In their respective contentions, as well as in the letter of July 1, 1975, the parties have assumed that contract non-renewal and termination of employment are synonymous for application of a notice provision specified in the handbook. In fact, there is little warrant for this assumption, the handbook being, at best, ambiguous as to when notification is to be given if the contract of a teacher on regular appointment is not to be renewed. Snowden, however, makes no contention on this appeal that latent or patent ambiguity in the handbook could be resolved in his favor by extrinsic evidence, thus requiring trial on the merits. His only claim on this phase of the case is that undisputed facts entitle him to summary judgment.

We therefore indulge the assumption that handbook paragraph 3a(3) requires twelve months advance notice if the contract of a teacher on regular appointment is not to be renewed. This assumption actually favors Snowden because, in contending on the merits, it would be Snowden's burden to show entitlement to notice and breach by the university of this condition. The ultimate issue here is, therefore, whether the notice given Snowden June 20, 1975 was timely.

■ The judgment of the trial court included no findings of fact or conclusions of law and therefore provides no guide as to the court's reasons for deciding that the June 1975 notice was effective. Such lack of specificity is, however, of no import because review of summary judgment is equivalent to reviewing a court tried or equity proceeding and if, as a matter of law, the judgment is sustainable on any theory, the judgment of the trial court must be sustained. *Flanary v. Rowlett*, 612 S.W.2d 47 (Mo.App.1981); *City of Kirkwood v. City of Sunset Hills*, 589 S.W.2d 31 (Mo. App.1979).

■ Snowden's argument rests on the conclusion that his 1975–1976 teaching contract ended and the effective date of his termination was May 13, 1976, the last day of the 1976 spring semester. That premise is faulty and contrary to the facts in the case. By the express language in the Faculty Handbook, all faculty contracts were effective for the ten-month academic year, September through June, and salary was paid accordingly in those months. Because of the two-month summer hiatus, no faculty, except those specially employed for a summer session, was employed in July and August. A new contract year began again each September. The critical date for notification of non-renewal was therefore September because there was neither entitlement to nor expectation of re-employment before that date. The effective date of Snowden's termination was September 1976 when his contract was not renewed. Any notice given before September 1975 would therefore satisfy the twelve-month requirement.

Alternatively, even were it assumed that Snowden was "terminated" at the close of the academic year for which he was last employed, the agreed facts refute Snowden's contention that the final date of his employment was May 13, 1976. As observed above, all faculty contracts were effected for the ten-month period from September through June without any limitation or adjustment based on the semester dates of the university calendar. Salary was due and was paid in equal installments for the ten-month period, including the month of June. Snowden acknowledges that he, too, was paid for the month of June 1976 and he makes no claim that the payment was abnormal or was other than his employment agreement required. Snowden was employed through June 1976 and the notice of June 20, 1975 was within the twelve-month advance period.

Judgment was appropriately entered for defendants as to Snowden's claim for wrongful termination.

## II.

### The Tenure Consideration Issue

In the second aspect of the case, Snowden contends his employment agreement was breached by the university because he was not provided meaningful and unbiased consideration for tenure. Before discussing the merits of this issue, however, the question of briefing deficiency must be addressed. Defendants assert that nothing is here preserved for appellate review because Snowden's brief does not comply with Rule 84.04(d). The contention is valid for the reason that point II of the points relied on and related sub-points do not meet minimal requirements for stating wherein and how the trial court erred. Such is illustrated by the following examples from two of the six sub-points under point II:

> "Material Fact Issues Exist As To Whether There Were Substantial Deficiencies In The Tenure Consideration Procedure, Resulting In A Breach Of Plaintiff's Contract And Violation Of His Rights To Due Process."

> "Material Fact Issues Exist As To Whether The Entire Tenure Consideration Procedure Was Tainted By Prejudicial Actions And Prejudgments Of Administrators Of Defendant University, Including Defendant Kenner, Beyond The Scope Of The Procedure."

As has frequently been pointed out, most notably in *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978), the point relied on set out in the brief must state the challenged ruling of the trial court, the rule of law which should have been applied and the evidentiary basis for the result advocated. While Snowden's point II generally contends that summary judgment should not have been granted because facts were in dispute, his point and sub-points do not state what facts were contested nor does he indicate what pleadings, affidavits or exhibits posed any fact question. Language such as "Substantial Deficiencies" and "Prejudicial Actions" is conclusionary and sheds no light in a search for fact issues which Snowden apparently claims required trial on the merits.

The impediment which briefing of this character presents is the obligation upon the court to search through the argument portion of the brief and thence through the transcript to identify potential fact disputes and then to balance the significance of the detail so extracted against the general language in which the points relied on are couched. While not compelled to do so, we have assumed that burden here in the interests of resolving this long pending litigation. If, in the process, some issue latent in the generalized propositions of Snowden's brief are not addressed, the fault is in the brief and Snowden must accept responsibility. *Overland Outdoor Advertising Co., Inc. v. Missouri State Highway Commission*, 616 S.W.2d 563 (Mo.App.1981).

While Snowden's brief contends only that summary judgment was improper because facts relevant to his tenure consideration were disputed, the dispositive issue here and, no doubt in the trial court, was whether the pleadings, affidavits and exhibits stated a cause of action for the relief prayed. It thus becomes unnecessary to search for contested facts because, for the purpose of this appeal, we view the record in the light most favorable to Snowden against whom the summary judgment was rendered. *Shaw v. Clough*, 597 S.W.2d 212 (Mo.App.1980).

The gravamen of Snowden's complaint on the tenure question, although somewhat obscured by excessive rhetoric, is breach of contract resting entirely on the provisions which obligated the university to afford tenure consideration in the fifth year of employment. Again, as in the termination issue, the content of the Faculty Handbook is relevant. The handbook specifies that qualification for tenure shall be reviewed in a formalized, nine-step procedure and requires such consideration as to all faculty serving on regular appointment conditioned only upon attainment of the rank of assistant professor with four years prior employment at the university. In part, the mandatory consideration of a faculty member for tenure acquires significance because

the handbook also limits regular appointment to seven years. One who does not attain tenure status within that time may thereafter be employed only from year to year and has diminished prospects for attaining tenure.

For purposes of this opinion, the nine-step tenure procedure may sufficiently be summarized as involving the various members of the university hierarchy in ascending order. Each indicates by written endorsement his opinion as to whether or not tenure should be granted the candidate. The process commences with the review by the chairman of the department in which the candidate is serving and is concluded with a decision by the president and the board of regents of the university. Notices and opportunities for conferences are provided at various steps and, where a recommendation against tenure is expressed, the author is obligated to state reasons and to notify the candidate. The ultimate decision by the president and board is final and is not dependent on the extent of favorable endorsements which the candidate has accumulated, although the president and board members presumably weigh the opinions of other university officials and consider facts developed during the nine-step process. The record so compiled in Snowden's case was before the president and the board when the decision was made.

As to his claim against the university and its board of regents, Snowden makes no charge of malice or intentional wrong, only that he was denied a right to a fair consideration for tenure to which he was entitled under the employment agreement. While he acknowledges, with some exceptions as to notice and statement of reasons for non-endorsement, that he was formally accorded the nine-step consideration for tenure, he asserts that the entire process was tainted because the department chairman, the dean of the college, the vice-president for academic affairs and others who participated in the tenure review were prejudiced against him. He points to the intercession by Kenner, who opposed granting tenure and actively sought to persuade others to a like opinion, and to the predisposition of other university officials to deny tenure apart from the merits of Snowden's qualifications. As a consequence, he argues that the review was not impartial and unbiased but was a sham proceeding with the decision foredoomed.

On the foregoing allegations that officials of the university, and particularly Kenner, did not serve as impartial examiners on the merits of his case but advocated denial of tenure, Snowden asserts entitlement to a judicially ordered award of tenure, or a mandate that the tenure issue be reconsidered by "an impartial and unbiased procedure." Damages and costs are also prayed.

The position of the university on its motion for summary judgment in the trial court and here is that Snowden, and any other faculty member similarly situated, was entitled to consideration for tenure under the procedures described in the Faculty Handbook and upon substantial compliance with those procedures, the employment contract obligations of the university have been met. There being here no factual basis to contend that the handbook procedure was not substantially observed, apart from the claim that prejudgment and bias subverted the intent for merit evaluation, the university asserts that Snowden has made no statement of a cause of action.

Snowden cites no authority for the contention that his contractual entitlement to consideration for tenure is breached if he demonstrates that the opinions of advisory peer review were reached upon inadequate information, misinformation or that those participating were prejudiced against him. The Faculty Handbook procedure does not contemplate a review by disinterested impartial third parties but anticipates that endorsement or non-endorsement will be by individuals on the university staff who are already acquainted with the candidate or his work or both and who will thereby have formed opinions as to his suitability for tenure. Whether those opinions are sound or flawed is ultimately for the president and board of regents to decide, based not alone on the opinions but the required

statements of reasons if the candidate is not endorsed. Moreover, the opinions expressed by Kenner and others about Snowden were neither controlling nor conclusive and their effect on the president and board of regents with whom decision responsibility lay is mere speculation.

Absent allegations of malice or intent to deliberately injure Snowden, none of which was charged against the university, its president or the board of regents, Snowden has not stated facts sufficient to establish a cause of action for breach of contract in his consideration for tenure. It appearing that Snowden's petition fully asserted all available facts and claims, judgment was appropriately entered for defendants as to the tenure consideration issue.

### III.

### The Personal Claim Against Defendant Kenner

In a separate count, Snowden asked compensatory and punitive damages of Kenner, the head of the university mathematics department where Snowden was assigned. Snowden alleged that his loss of employment and his failure to attain tenure were attributable to false charges by Kenner that Snowden was incompetent in his work. He further asserted that the statements and activities of Kenner in opposing retention of Snowden on the faculty were animated by the malice of Kenner toward Snowden and were accomplished with the willful intent of Kenner to cause Snowden injury.

The motion by Kenner for summary judgment accompanied and preceded by interrogatory answers, admissions and supporting exhibits established the procedures detailed earlier in this opinion which required expression by Kenner of his evaluation of Snowden's work performance and his endorsement or non-endorsement for tenure. Kenner's motion contended that Snowden stated no cause of action in his Count II because the charge that willful and malicious conduct by Kenner had brought about Snowden's damage was not supported by any allegations of fact. To the contrary, Kenner argued that his participation in the nine-step review process was required rather than volunteered and, in any event, there was no evidentiary basis to claim that the independent decision by the university president and board of regents turned upon or was the result of Kenner's actions.

While Snowden did respond to Kenner's motion by filing opposing suggestions, he made no pleading amendment and he filed no affidavit or exhibit setting out a factual basis for his claim that Kenner acted willfully and maliciously to injure Snowden. The cause thus stood on the bare petition allegation that opposition by Kenner to Snowden's retention was malicious with intent to cause injury.

Where the rules, bylaws or procedures of an organization provide for reports on qualifications of members or applicants, the processing of charges relevant to disciplinary action or other internal matters of administration within the framework of the organization, statements or communications made in connection with such activities enjoy a qualified privilege. *Pulliam v. Bond,* 406 S.W.2d 635 (Mo.1966). Once the condition of qualified privilege attaches, no inference of malice may be drawn from the communication of false matter and the plaintiff has the burden of proving express malice. *Pulliam v. Bond, id.; Cash v. Empire Gas Corp.,* 547 S.W.2d 830, 834 (Mo. App.1976).

Assuming, as we do here for purposes of reviewing entry of summary judgment, that Kenner falsely evaluated Snowden as incompetent and that Snowden was in fact capable and qualified, the communication by Kenner was conditionally privileged. The nine-step tenure consideration procedure required Kenner to express his opinion of Snowden's performance and qualifications and, if the opinion were unfavorable, to state reasons. Snowden may not recover damages merely by alleging and proving that the reports circulated by Kenner were false or misrepresented Snowden's academic qualifications. He must also allege and

prove that Kenner did so with express malice intending that Snowden be damaged thereby.

As noted above, Snowden's petition alleged no facts tending to prove the conclusory assertion that Kenner was motivated by malice toward Snowden or that Kenner intended him harm. At most, the facts from Count I incorporated in Count II by reference would show, if proved, that Kenner was biased and prejudiced against Snowden, was unfair and chose to ignore Kenner's merits as an instructor and candidate for tenure and expressed his opinions to others involved in the tenure consideration issue. The proof of those facts, however, makes no case of express malice, the intentional doing of a wrongful act with intent to cause damage, and the petition allegations are therefore deficient when tested by motion for summary judgment.

When a litigant is confronted with a motion for summary judgment supported by interrogatories, admissions and pleadings, he cannot sit idly by relying on pleadings of ultimate facts, but he must come forward with specific facts showing that there is a genuine issue for trial. If he does not so respond, he is vulnerable to the remedy of summary judgment. *Cherry v. City of Hayti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978); *Edwards v. Heidelbaugh*, 574 S.W.2d 25, 28 (Mo.App.1978).

Summary judgment was properly entered for defendant Kenner because Snowden made no showing of specific facts entitling him to recover against Kenner for intentional and malicious acts.

### IV.

#### The Due Process Claim

In a third count added later to Snowden's petition, he advanced a mixed and somewhat confusing series of claims based on the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and unspecified provisions of the Constitution of Missouri. The claims were based on the factual allegations of Count I and asserted a denial of Snowden of procedural due process and a deprivation of property both in the non-renewal of his teaching contract and in the denial of tenure.

Snowden's brief does not instruct as to any potential theory of recovery on Count III which would be appropriate and applicable in substitution for the cause of action stated in Count I. Snowden's claims in Count I were based exclusively on his employment contract including the provisions of the Faculty Handbook. Neither Snowden nor the defendants disputed the content of the handbook or its incorporation as part of Snowden's contract and Snowden makes no claim, even in Count III, that he is not bound by the procedural terms of the handbook as to re-employment and tenure. Further, he makes no claim that those terms were inadequate for protection of his expectancy for employment and tenure or to afford him procedural and substantive due process.

Demonstrative of the dependency of Count III claims on whatever rights Snowden was entitled to enjoy under the employment contract rather than by constitutional protection is Snowden's argument that his Fourteenth Amendment "property right" to continued employment turned on whether he received timely notice of termination. The latter question depends entirely upon the notice provision in the Faculty Handbook. So, too, does Snowden base his claim to due process on observance of the nine-step tenure consideration format appearing in the handbook. Count III was therefore surplusage and was adjudicated upon resolution of Count I.

The judgment is affirmed.

All concur.