James T. HOLT, Jr., a Minor,
Appellant,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a Corporation,
Respondent.

No. WD 35201.

Missouri Court of Appeals,
Western District.

Nov. 27, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Jan. 29, 1985.

Application to Transfer Denied
April 2, 1985.

James Carey Thompson, Farrell D. Hockemeier, and Stanley M. Thompson (argued), Driskill & Thompson, Richmond, for appellant.

Thomas M. Deacy, Kansas City, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

■ James Holt, the equitably adopted minor son of Ann Holt, sued defendant, Burlington Northern Railroad, for the wrongful death of Ann Holt. Defendant filed a motion for summary judgment on the ground that James Holt is not the adopted son of the deceased within the meaning of § 537.080(1).[1] The court sustained defendant's motion and plaintiff appeals. We reverse and hold that a child who has been equitably adopted is an adopted child for purposes of § 537.080(1).

On June 10, 1981, defendant's train struck and killed Ann Holt in her car. In addition to plaintiff, several brothers and sisters survived her. They also have sued the defendant for wrongful death. Their claims are not before us.

Ann Holt's sister gave birth to plaintiff, but soon after his birth Ann and her sister orally agreed that Ann would adopt him. She took James into her home and reared him as her son until her death when he was thirteen years old. She never adopted James in accordance with Missouri's adoption statutes. § 453.010 et. seq. Six months after Ann's death, the probate division of the Ray County Circuit Court decreed that James is the equitably adopted son of Ann Holt. No one questions the validity of that decree, but defendant disputes its effect.

In granting defendant summary judgment, the circuit court held that Ann Holt's equitably adopted son is not a person within the class of beneficiaries entitled to bring a wrongful death action for her death.

Plaintiff raises two points on appeal. First, the trial court erred because plaintiff is within the class of beneficiaries entitled to maintain an action for wrongful death. Second, the defendant's motion was an improper collateral attack on the probate court's decree of equitable adoption. Since we find that an equitably adopted child is within the class of beneficiaries entitled to

---

1. All sectional references are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

 Section 537.080 provides in part as follows:
 Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstances which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for
 (1) By the spouse or children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive;
 ....

bring this action, we need only address plaintiff's first point.

■ Appellate review of a grant of a motion for summary judgment is equivalent to the review of a court tried case or an equitable proceeding. If as a matter of law the trial court's determination is sustainable upon any theory, the appellate court must affirm. *Snowden v. Northwest Missouri State University*, 624 S.W.2d 161, 165 (Mo.App.1981). The only question before us is one of law, and we hold that the trial court's determination is not sustainable upon any theory.

■ Our resolution of this question is based on our construction of the Missouri wrongful death act, § 537.080, et seq., and the intent of the legislature in adopting the act. We do not, and cannot hold that the equitably adopted child has an equal legal status with the legally adopted child. In this state the equitably adopted child does not have all the legal rights afforded the legally adopted child, and we do not intend to disturb that principle. *Goldberg v. Robertson*, 615 S.W.2d 59 (Mo.1981) (en banc).

Defendant maintains that *Goldberg* is controlling and requires that we affirm the trial court. In *Goldberg* the supreme court was faced with the issue whether an equitably adopted child was a "legally adopted" child for purposes of the Missouri inheritance tax statute. § 145.060.1(1) (repealed 1980). The director of revenue appealed a decision that an equitably adopted child qualified as a legally adopted child within the terms of § 145.060.1(1). The supreme court reversed, holding that, under the statute, an equitably adopted child did not so qualify.

The dual bases of the *Goldberg* decision distinguish it from our case. First, in its effort to find the reason the legislature used the words "legally adopted child" in the tax statute, the supreme court examined the development and nature of legal and equitable adoption in Missouri.

The court briefly traced the development of legal adoption to the present system which gives the juvenile court exclusive jurisdiction over adoption. Under the present adoption statutes the legally adopted child is removed from the blood line of his natural parents and afforded full legal status as the natural child of his adoptive parent. § 453.010, et seq.

The supreme court then went on to discuss the development and the nature of equitable adoption in Missouri. All the cases cited by the court deal with the issue of the equitably adopted child's rights of inheritance. The rule that has emerged is that the equitably adopted child is the heir of his adoptive parent but not an heir of the collateral kin of the adoptive parent. *Id.* at 62, and the cases cited therein.

■ The *Goldberg* court also discussed the theoretical underpinnings of the equitable adoption doctrine. The theory is either that in decreeing an equitable adoption the court is specifically enforcing a contract to adopt which has been performed or that an equitable estoppel is raised to bar a denial of the fact of the adoption. *Id.* The reach of the decree of equitable adoption is limited to allowing the equitably adopted child to inherit from the adoptive parent but not to inherit through the collateral kin. The rights of the equitably adopted are limited in this fashion based on the theory that the court is enforcing a contract and only the parties to the agreement and those in privity are bound; the adoptive parent is a party but the collateral kin are not parties and are not in privity with the parent. *Id.* at 63. Further, the equitable adoption action is an in personam action binding only upon the parties to the action and those in privity, while a legal adoption is an in rem action binding on the whole world. *Id.*

The court also presented a second and more compelling reason for its construction of the tax statute. The court said at 61–62,

It is of special significance in this case that the same General Assembly that restricted the availability of adoptions by granting the juvenile court exclusive jurisdiction over adoption cases through S.B. 313, also created the inheritance tax section which is here in question by pas-

sage of C.S.H.B. 638, Laws of Mo.1917, p. 114....

In conclusion, at 63 the court said,

> The distinction between a legal and equitable adoption and the fact that the Forty-ninth General Assembly was considering a bill providing for the adoption of children at the same time it considered the inheritance tax, make it clear that when the legislature used the words "legally adopted child" it referred only to children adopted in conformity with the statutes of this state....

We have discussed the *Goldberg* decision at length to show that it is a decision limited to a construction of a special inheritance tax statute. Here we are examining an entirely different statute, one which only refers to "children, natural or adopted" and not *"legally adopted child"* as does the tax statute.

*Goldberg*'s discussion of equitable adoption is largely dicta designed to show the undeniable legal fact that the equitably adopted child does not stand equal with the legally adopted child. That unequal status coupled with the fact that the same session of the legislature that passed the adoption law enacted the inheritance tax statute led the court to conclude that the Assembly's intent was to limit the special tax treatment of the statute to the legally adopted child.

*Goldberg* has no application to this case because whether or not James Holt, as an equitably adopted child, is to be accorded the full inheritance rights of a legally adopted child is not in issue. But *Goldberg* and the cases it cites do stand for the principle that the law does recognize some type of legal relation with some attendant legal rights between the equitably adopted child and parent. We must determine here whether the legislature intended to include the equitably adopted child within the phrase "children, natural or adopted" in the Missouri wrongful death provision, § 537.080(1). *Goldberg* has not answered that question.

Defendant also relies heavily upon *Goldberg*'s citation (615 S.W.2d at 63) to *Meenes v. Cowgill*, 359 Mo. 697, 223 S.W.2d 412, (1949), where at 418 the court said that:

> [i]f Guy M. Cowgill had legally adopted appellant in compliance with the statutory requirements, the adoption would have been binding on all persons, including the respondents, but in an equitable proceeding based upon contract, only the parties thereto, or those in privity with them are bound. Equity acts only against specific individuals and, in such case, one person may be bound and not another. A decree of equitable adoption merely forecloses "the parties to the suit against a denial of the status that the court declares" and the status decreed exists only in equity and against the judgment defendants. As between appellant and the respondents, appellant was not, in either law or equity, the adopted child of Guy M. Cowgill by reason of his contract to adopt her and the facts and circumstances admitted.

Defendant argues that since it was not a party to the equitable adoption, it is not bound by it and therefore James Holt is not an "adopted child" for purposes of the statute.

■ The defendant's argument is flawed. The *Meenes* decision and other equitable adoption cases concern the rights of the adoptive child in reference to the collateral kin. The adoption does not bind the collateral kin because of the principle of privity which is a contract concept. But an action for wrongful death is ex delicto and not ex contractu. *State* ex rel. *Sisters of St. Mary v. Campbell*, 511 S.W.2d 141, 147 (Mo.App.1974).

■ Even though equity only binds the parties to the suit, it does, as it has in this case, recognize a relationship between adoptive child and parent. A wrongful death action provides a cause of action for the severance of a relationship by death between certain statutorily designated classes of parties. *See* Davis, *Wrongful Death*, 1973 Wash.U.L.Q. 327, 331–37, for a discussion of the theoretical bases of

wrongful death actions. *Cf. O'Grady v. Brown*, 654 S.W.2d 904, 911 (Mo.1983) (en banc). In *O'Grady*, the court held (at 911) that the revisions in the statute in 1979 providing for recovery for loss of society and companionship changed the statute's focus. The question we must resolve is whether the legislature intended to provide a cause of action for the severance of the relationship between the equitably adoptive parent and child. In other words, is a cause of action for wrongful death one of the limited rights afforded the equitably adoptive child or parent?

Since the passage of Missouri's first wrongful death act in 1855, the courts have consistently held that wrongful death is a statutorily created action in derogation of the common law and must be strictly construed. The cases following this rule of construction are too numerous to cite. *See* 10 Missouri Digest and 17 Missouri Digest 2d, Topic: Death, Key No. 9. The respondents rely heavily upon that rule of construction, but the decision in *O'Grady* has reinterpreted the rule.

In *O'Grady*, the supreme court held that strictly speaking a wrongful death action is not in derogation of the common law because it does not eliminate a common law right, it only "mends the fabric of the common law," that the wrongful death statute is a remedial act and should not be strictly construed but should be construed with a view to promoting the apparent objectives of the act. *Id.* at 908. The court discussed with approval, *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), and the proposition that no present public policy discourages recovery for wrongful death. *Id.* The supreme court also regarded as significant that the legislature has continued to incorporate common law principles as the basis of·entitlement to a wrongful death action. "This patently indicates that the legislature did not intend to occupy this field of law entirely, leaving no room for the judicial development of wrongful death remedies." *Id.* at 911.

■ Accordingly, we construe § 537.080 (1) in light of *O'Grady* as a remedial statute not in derogation of the common law.

But do the purposes of the statute allow an equitably adopted child to have the action for wrongful death an adopted child has under § 537.080(1)? In *O'Grady* the court (at 908) found that the statute has three basic objectives: to compensate bereaved persons for their loss, to ensure that tortfeasors bear the cost of unsafe activities, and to deter harmful conduct which might lead to death. Needless to say, to allow James Holt to bring this action would serve all three purposes: compensation, penalty, and deterrence.

James Holt is obviously one who would be bereaved by the death of Ann Holt. But the wrongful death act does not provide an action for everyone who suffers a loss because of death; it specifies a limited class of party beneficiaries. § 537.-080(1)(2)(3). The question is whether one who has been judicially decreed to be an equitably adopted child is in the class of plaintiff beneficiaries designated in the statute.

First, the wrongful death act was substantially amended in 1979, especially in the expansion of the scope of damages recoverable under the act permitting recovery for loss of society and companionship. § 537.090.[2] The court in *O'Grady* found

---

**2.** Section 537.090 provides:

> Damages to be determined by jury—factors to be considered
>
> In every action brought under section 537.-080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the

reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages

that this revision changed the focus of the statute and that the legislature intended that the courts construe the statute to give effect to the change.

As we have stated earlier, the wrongful death act provides recovery for the severance of a relationship between certain designated parties. Davis, *Wrongful Death, supra*. In this case the fact of the equitable adoption at least establishes the existence of a legally recognized relationship between the adoptive parent and child, Ann and James Holt. *Goldberg v. Robertson, supra*. That is the relationship which the statute protects, and it does so even though the defendant was not in privity with the parties to the agreement. The defendant's action is alleged to have ended the relationship.[3] The plaintiff here was reared from infancy as the son of the decedent. We may reasonably assume that the loss of his equitably recognized mother-in-fact caused him to suffer such damages as loss of society, companionship and guidance within the meaning of the statute. Allowing James Holt to bring this cause of action gives effect to the statute's change in focus and furthers the legislative intent. *O'Grady, supra*.

■ Obviously, we cannot hold that this plaintiff has suffered such damage as a matter of law, but we can and do hold that he had the type of relationship with the decedent in which one may reasonably assume such damage was incurred. James Holt still must prove his damage at trial. The lack of a legal, formal adoption occasioned by the failure of the equitably adoptive mother should not be charged to a child who has suffered the type of losses for which the statute provides recovery. As the *Goldberg* decision mentions, equitable adoption is based upon a contract the purpose of which is the protection of the

child. *Goldberg v. Robertson, supra*, 615 S.W.2d at 62. Our decision here is consistent with that purpose.

The intent of the General Assembly to include the equitably adopted child within the class of adopted child plaintiff beneficiaries entitled to sue for wrongful death is further evidenced by the amendments of the act over the years. The 1889 version of the statute, § 4426, authorized a minor child of a deceased parent to bring the action as follows:

> First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased, whether such minor child or children of the deceased be the natural born or adopted child or children of the deceased: Provided, that if adopted, such minor child or children shall have been duly adopted according to the laws of adoption of the state where the person executing the deed of adoption resided at the time of such adoption; or, third, if such deceased be a minor and unmarried, whether such deceased unmarried minor be a natural born or adopted child, if such deceased unmarried minor shall have been duly adopted according to the laws of adoption of the state where the person executing the deed of adoption resided at the time of such adoption. . . .

Adoption by deed was the statutory or legal means of adoption in effect in 1889. The same language was included in the 1939 and the 1955 revisions of the statute. § 537.080(2) (1959). In 1967 the act was once again amended as follows and reference to adoption by deed was deleted:

> (1) By the spouse or minor children, natural or adopted, of the deceased, either jointly or severally; provided, that in any such action the petitioner shall

as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages

for grief and bereavement by reason of the death shall not be recoverable.

3. The statute also allows recovery for survival damages, damage the decedent suffered, as well as authorizing recovery for the plaintiff's own damage occasioned by the death. *O'Grady, supra*.

satisfy the court that he has diligently attempted to notify all parties having a cause of action under this subdivision; and provided, further, that only one action may be brought under this subdivision against any one defendant; or.... § 537.080(1) (1967). The present version of the statute refers to "children, natural or adopted" without providing that the adoption be legal or in accordance with the laws of the state.

 When the legislature amends a statute, changing its language, it is presumed to have intended the change to have some effect, *State v. Swoboda*, 658 S.W.2d 24, 26 (Mo.1983) (en banc). Following the fundamental rule that a court's primary objective in construing a statute is to discern the intent of the legislature, an amended statute should be construed on the theory that the legislature intended to make some substantive change in the law. *Sermchief v. Gonzales*, 660 S.W.2d 683, 688–89 (Mo.1983) (en banc).

What was the legislative intent in deleting the provision requiring that to sue a child had to be "duly adopted" according to the laws of adoption? The legislature may merely have intended to update the statute since adoption by deed was no longer the statutory method of adoption in 1967. The statutory change to adoption by juvenile proceedings was made in 1917. But if the legislature merely intended to update the wrongful death statute so as to be consistent with the current adoption procedure it had only to eliminate any language referring to adoption by deed or to have substituted language referring to legal adoption. It did not do so. Instead it dropped the provision altogether.

 We conclude, therefore, that the legislature intended that, for purposes of the wrongful death act, an adopted child need not be "duly adopted" in accordance with the adoption statute. In construing a statute a fundamental precept is that the legislature acted with knowledge of the subject matter and the existing law. *Bushell v. Schepp*, 613 S.W.2d 689, 691 (Mo. App.1981). For that reason, we assume that when it deleted the provision the legis-

lature knew the difference between legal and equitable adoption. It seemed to know the distinction in 1917 when it passed § 145.060, construed in *Goldberg v. Robertson, supra*. One of the reasons for the decision in *Goldberg* is that the legislature recognized the difference in passing the inheritance tax statute.

 Defendant points out that the plaintiff is now living with his natural mother raising the possibility that if his natural mother is tortiously killed he would have a wrongful death action for her death. That contention pertains only to plaintiff's damages and not to whether he has a cause of action. Recovery of pecuniary losses or the amount of monetary support provided by the decedent to the plaintiff is authorized in § 537.090. At trial, the plaintiff may not be able to show any pecuniary loss because of his present circumstances, but he can still recover for the loss of the companionship, guidance and society of his adoptive mother. § 537.090. Even if the plaintiff can show no actual damage at all, he still has a cause of action and can recover nominal damages in vindication of the suffered wrong. *State ex rel. Kansas City Stock Yards Co. v. Clark*, 536 S.W.2d 142, 149 (Mo.1976) (en banc).

Defendant also relies upon the case of *Sarazin v. Union R. Co.*, 55 S.W. 92 (Mo. 1900). In *Sarazin*, the parents of a child allegedly adopted by deed brought a wrongful death action under § 4426 (1889). As we earlier noted, that act required that an adopted child be duly adopted according to the laws of the state where the person executing the adoption deed resided at the time of adoption. The court held (at 94) that the deceased child had not been so duly adopted and therefore the parents had no action for wrongful death.

*Sarazin* is distinguishable in several ways. First, the provision relied upon by the court in *Sarazin* has been repealed. Moreover, the principal reason for the holding in *Sarazin* was that the adoption had not been in conformance with the Missouri adoption statute. The court mentions the equitable adoption doctrine, but the opinion is unclear as to whether this was a theory

presented by the parents or whether the court was addressing the issue sua sponte. The court's discussion of the point is merely dictum, and the fact that § 4426 required adoption according to the statutory method was the reason for the court's decision. *Sarazin* is not controlling.

*Sarazin* is also distinguishable and not controlling because there the court stated that equitable adoption is for the benefit of the adoptive child. The plaintiffs in *Sarazin* were the parents, and the doctrine is not for their benefit but for the child's. In our case, the child seeks the benefit of the doctrine. Finally, at the time of the *Sarazin* decision, the unquestioned rule was still that wrongful death was in derogation of the common law and the statute had to be strictly construed. *See Jackson v. St. Louis I.M. & S. Ry. Co.,* 87 Mo. 422, 56 Am.Rep. 460 (1885). As we have already pointed out, that is no longer the case in Missouri.

Defendant also raises an issue relating to when James Holt was decreed equitably adopted. The decree was not entered until six months after Ann Holt's death. Defendant argues that a wrongful death action accrues at the time of death and vests in the highest statutory class of beneficiaries existing at that time. *Crane v. Riehn,* 568 S.W.2d 525, 527 (Mo.1978) (en banc). Therefore, defendant asserts, since James Holt had not been decreed equitably adopted at the time of death, the action vested in Ann Holt's brothers and sisters cutting off his cause of action.

 The argument fails because the decree does not create the adoption but only recognizes its existence. The equitable adoption in this case was based upon the theory of specifically enforcing an oral contract performed on both sides. An equitable adoption based on contract theory arises at the time of performance by the adoptive parent. *Taylor v. Coberly,* 327 Mo. 940, 38 S.W.2d 1055, 1060 (1931); *McCary v. McCary,* 239 S.W. 848, 850 (Mo. 1922); *Mize v. Sims,* 516 S.W.2d 561, 566

(Mo.App.1974); *Watermon v. Secretary of Health, Education and Welfare,* 342 F.Supp. 968, 970 (E.D.Mo.1972). The probate court found and no one disputes that the oral adoption contract was fully performed on both sides before the decree was entered. The parent or parents perform the contract by rearing the child as they would their own child, and the child performs by acting as the child of the adoptive parents. *Taylor, supra,* at 1060. Ann Holt died when James was thirteen, and he had been reared as her child almost since his birth. The equitable adoption of James occurred at some point before her death, and the action vested in him when she died.

In considering this case, we cannot ignore the fact that the filial relationship necessary to this cause of action is a judicially-established and recognized fact. That relationship is based on the evidence of the parents' undertaking but the proof will usually, although only incidentally, establish the filial love, affection, trust and dependence which largely inspire and lie at the heart of the wrongful death act. Moreover, such judicially-established relationships are not the kind to be faked or contrived to set up fraudulent claims. Our holding here recognizes only those relatively rare claims of equitably adopted children whose losses are as real and devastating as natural sons and daughters suffer upon the death of their parents.

Several other states have found no such cause of action. *Grant v. Sedco Corp.,* 364 So.2d 774 (Fla.App.1978); *Limbaugh v. Woodall,* 121 Ga.App. 638, 175 S.E.2d 135 (1970); *In re Estate of Edwards,* 106 Ill. App.3d 635, 62 Ill.Dec. 407, 435 N.E.2d 1379 (1982); *Roche v. Big Moose Oil Field Truck Service,* 381 So.2d 396 (La.1980).[4]

We have not been persuaded by those and similar decisions defendant has cited. First, in part they are limited by the application of the rule of strict construction to wrongful death statutes, *Roche, supra,* at 399; *Limbaugh, supra,* at 138; *In re Estate of Edwards, supra,* at 1382; *Grant v.*

---

**4.** On the other hand, the Supreme court of Nevada has held that the equitably adopted child has an action for the death of the adoptive

parent. The Nevada wrongful death statute gave a cause of action to a child because an equitably adopted child is an "heir" of the par-

*Sedco, supra,* at 775, a rule no longer applicable to Missouri's wrongful death act. *O'Grady, supra.* Furthermore, and more significantly, none of those cases discusses statutory changes in the wrongful death act similar to the changes made in our own statute, that is, the deletion of the requirement of formal, legal adoption by deed. Those factors are central to our holding here.

For the foregoing reasons, we hold that the legislature did not intend to preclude an equitably adopted child from bringing a wrongful death action and that allowing the action furthers the purposes of the statute and is consistent with *O'Grady v. Brown, supra.* James Holt, the decreed equitably adopted child in this case, is an adopted child under § 537.080(1). Accordingly, we reverse the summary judgment entered in favor of the defendant and remand the case to the circuit court for trial.

All concur.

ent, that is, "any person entitled to inherit the estate of a decedent." *Bower v. Landa,* 78 Nev. 246, 371 P.2d 657, 661 (1962).

