**Eli Orlan SELL, Claimant–Respondent,**

v.

**OZARKS MEDICAL CENTER, Employer–Appellant.**

**No. SD 30544.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 31, 2011.

Jared Vessell, Atwill & Montgomery, Attorneys at Law, L.L.C., Columbia, MO, for Appellant.

Justin H. Nelson, Garrett & Silvey, West Plains, MO, for Respondent.

GARY W. LYNCH, Judge.

Ozarks Medical Center ("Employer") appeals the final order of the Labor and Industrial Relations Commission ("the Commission") awarding workers' compensation benefits to Eli Orlan Sell ("Claim-

ant"). Employer claims that the Commission's finding that Employer was not prejudiced by Claimant's failure to give written notice as required by section 287.420 because it had actual notice of Claimant's injury was against the weight of the evidence and misapplied the law in failing to strictly construe section 287.420.[1] Finding no merit in Employer's claims, we affirm the Commission's award.

### Factual and Procedural Background

Claimant filed a claim for compensation with the Division of Workers' Compensation ("the Division") on August 1, 2006. Claimant alleged that on May 29, 2006, at approximately 9:15 a.m., he "was loading a lawn mower into the back of a motorized vehicle" and was injured while at work in West Plains, Missouri. Employer filed a Report of Injury and Answer to Claim for Compensation on September 6, 2006, which indicated that the injury occurred around noon on May 29 and that Employer had not been notified of Claimant's injury until July 20, 2006. In its answer, Employer denied that Claimant suffered an injury while at work and contended that, regardless of the nature and scope of Claimant's alleged injury, any claim for benefits was statutorily barred because it was filed out of time. Employer further claimed that it had not received written notice of Claimant's alleged injury within the statutorily mandated thirty-day time period.

The Division held a hearing before an Administrative Law Judge ("ALJ") on May 21, 2009. At that hearing, Claimant testified that on May 29, 2006—Memorial Day—he arrived at his job as a handyman around 7:00 a.m. Claimant began his work day by picking up trash throughout the hospital and then took a break. Claimant

---

**1.** References to section 287.420 are to RSMo Cum.Supp.2005.

then attempted to put a lawn mower onto the back of a "souped-up golf cart with a little bed on the back of it"; he "bent down, twisted and slipped." He dropped the mower and caught himself on the back of the golf cart. He stated that "the concrete was damp and moist and stuff[,]" and that this was the reason he slipped. Claimant described the pain upon twisting his back, "like a sharp knife sticking you in the back." Claimant testified that, up until that point in the morning, his back had not been bothering him. Claimant further testified that, although he had lifted the lawn mower onto the golf-cart bed "[h]undreds and hundreds of times[,]" he had never before felt any pain in his back while doing so, and he had not had any back problems or sought medical treatment for his back.

After slipping, Claimant decided to push the lawn mower around the hospital's campus in order to complete the mowing, but his back "started hurting too much[.]" Claimant testified that he moved both the mower and the golf cart into "the shop" and called "the maintenance guy, told him I got hurt, and I thought I just pulled a muscle or something in my back, and I was going home." According to Claimant, he was told that was "[o]kay." Claimant was not sure if the man he talked to that day was Steve Tackitt or Cliff Webb. As it was a holiday, Claimant's regular supervisor, Cal Hutchings, was not there, and Claimant had been instructed to "report to the maintenance shop[.]"

The following day, Claimant's wife, Samantha Sell, drove Claimant to see his primary-care physician, Dr. Bruce Preston. According to Claimant, Dr. Preston prescribed a muscle relaxant and pain medication and gave Claimant a note to excuse him from work for the remainder of the week. Claimant's wife then drove from Dr. Preston's office to Employer, gave the note to Claimant's supervisor, Cal Hutchings, explained the origin of Claimant's injury, and told Hutchings to speak with Claimant if he had any questions. Claimant testified that Hutchings then went out to the vehicle, where Claimant sat waiting for his wife, and discussed the incident with Claimant. Claimant did not return to work that week.

Claimant reported to work the following Monday and told Hutchings he was not "feeling real good[ ]" because of lingering pain in his back. This was the first time Claimant recalled describing the accident to his supervisor. According to Claimant, Hutchings did not ask him any questions regarding his back pain or his fall but simply told Claimant "to do what [he] could and take it easy[.]" After making some telephone calls and organizing a few things, Claimant went home. After letting Hutchings know he would not be in because of lingering back pain, he returned to Dr. Preston the next day. Dr. Preston scheduled an MRI, which took place June 14, 2006, and sent Claimant to physical therapy, which Claimant quit after two or three appointments because his pain became worse.

Claimant was referred to a neurological specialist and was seen by Alice Mills, a nurse practitioner working in Dr. K. Douglas Green's office, on June 21, 2006, and multiple dates through early July. She diagnosed Claimant as having a degenerated lumbar disc and prescribed pain medication. In her records, Mills initially stated that Claimant's "back started hurting while working at OMC on May 20, 2006." She also noted that Claimant did not recall a specific injury; however, later records list the May 29, 2006, injury as the cause of Claimant's pain.

After Claimant's second visit to Dr. Preston, Hutchings scheduled an appointment for Claimant with Dr. Glen Cooper, who Claimant considered to be "the work-

men's comp doctor." Claimant testified that he saw Dr. Cooper twice. While he initially stated that he saw Dr. Cooper "just a few days" after getting hurt, he later acknowledged that he did not see Dr. Cooper until July 20, 2006, because "[t]hat's when [Hutchings] scheduled it[.]" Dr. Cooper initially diagnosed paresthesias, and excused Claimant from work. However, Claimant stated that during his second appointment with Dr. Cooper on August 28, 2006, Dr. Cooper told Claimant, " 'You need to get off your pain pills, deal with the pain, go back to work, or sit home and draw your unemployment and Social Security.... I am putting you off.' "

In his first report, Dr. Cooper noted that he did not feel the injury was work related and that Claimant needed to attend physical therapy and the pain clinic. Dr. Cooper later noted that Claimant "apparently did not follow the protocol that is well known to him[ ]" and that he was "undecided" as to whether Claimant's injury was work related. Ultimately, he referred Claimant to a physical therapist, who evaluated and discharged Claimant on the same day because Claimant's pain level was so high.

On September 10, 2006, Claimant was referred to Dr. Ferguson of Springfield Neurological. Dr. Ferguson diagnosed Claimant as having a lumbar spondylosis with lumbar sprain and recommended Claimant use heat, massage, ultrasound, and electrical muscular stimulation to treat his pain.

Claimant saw Dr. David Volarich on February 19, 2008. Dr. Volarich diagnosed Claimant with a disc protrusion at L4–5 and a bulge at L5–S1. He testified that, after viewing Claimant's MRI, examining Claimant physically, and conducting an oral examination, he believed the May 29, 2006, incident was the cause of Claimant's continuing back pain and his degenerative disc disease. Dr. Volarich rated Claimant at 50% permanent partial disability.

Claimant testified that he had twice before been injured at work, once in February 2006 when he injured his ankle and another time in April 2006 when he injured his wrist. Both times, Claimant simply told his supervisor, the supervisor filled out the appropriate forms, and Claimant signed them when told to do so. Claimant stated that he reads "very, very little[,]" and that he would be unable to fill out the requisite forms on his own. On both occasions, Claimant was sent to Dr. Cooper by Claimant's supervisor.

Initially, Claimant filed for short-term disability benefits. The first such form, which was completed by Dr. Preston as the attending physician, did not indicate that it was a work-related injury. However, a later form completed on August 20, 2006, noted the May 29, 2006, incident as the root cause of Claimant's pain. Likewise, the report filed with Claimant's MRI showed "[n]o known injury[ ]"; however, testimony was elicited at the hearing that the oral history taken during an MRI does not always contain etiology.

Claimant was eventually terminated from his job with Employer.

Claimant's wife testified that, prior to the injury on May 29, 2006, she had not known Claimant to have had any back problems. She stated that on the day following the incident, she drove Claimant to Dr. Preston's office, where Claimant received a note excusing him from work, and then drove Claimant to Employer, where she delivered the note to Hutchings, explained that Claimant had been hurt at work the day before, and told Hutchings to speak with Claimant if he had any questions. She did not remember Hutchings coming out to the vehicle to speak with Claimant.

Stephen Tackitt testified on behalf of Employer. At the time of Claimant's injury, Tackitt worked in Employer's maintenance department. Tackitt testified that on May 29, 2006, he received a call from Claimant "around lunchtime." According to Tackitt, Claimant did not mention any injury or accident but instead simply said, "I am going home[.]" Tackitt stated that he never had a conversation with Claimant regarding his injury.

Cal Hutchings, Claimant's supervisor, also testified for Employer. At the time of Claimant's injury and at the time of the hearing, Hutchings worked as Employer's Plant Operations Manager. Hutchings testified that the employees he supervises ordinarily report any injury to him and, if he was unavailable, "they would report it to either the secretary or people that ... would be there, the other mechanics." Either Hutchings or his secretary would fill out the appropriate injury report. Hutchings stated that it was not part of regular injury procedure for him to refer an injured employee to a particular doctor.

Hutchings testified that he did not work on May 29, 2006. He did not remember being told of Claimant's injury that day, and he denied speaking with Claimant or Claimant's wife the following day. Hutchings did remember receiving a note from Claimant's wife, but stated that "[i]t had to be, I would say, either the end of the week or the next week." Hutchings did not recall the note containing any information regarding the injury being work related, and he stated that Claimant's wife did not mention it being work related when she brought him the note. Hutchings claimed that the first time he heard about Claimant's injury being work related was through another groundskeeper in casual conversation. Although Hutchings stated that Claimant did personally discuss the accident with him, "it was later on; it

would have been way later on." He later admitted that the Monday following the accident "may have been when we talked about it[,]" because Claimant had tried to return to work but had been unable to finish the day. Hutchings later stated that Claimant did not try to return to work the following week. Hutchings denied sending Claimant to Dr. Cooper. Claimant never asked Hutchings to fill out an accident report, and Hutchings never filled one out. He acknowledged that Claimant has a limited ability to read and write and agreed that someone else always filled out forms for Claimant when he was injured. Hutchings could not remember how many notes excusing Claimant from work Claimant provided, but he said it was more than one.

In his decision, the ALJ found that Claimant and Employer had stipulated as to Claimant filing his claim within the time constraints of section 287.430[2] and to Claimant's average weekly salary of $436.17. After a recitation of the testimony presented at the hearing, the ALJ found "substantial and competent evidence to establish that the incident described by Claimant of lifting a lawnmower into the bed of an ATV at a time when his footing slipped on damp concrete pavement, constitutes an accident under the definition set out in Chapter 287." Relying on Claimant's testimony regarding what happened on May 29, 2006, and noting the absence of any other testimony regarding those events, contradictory or otherwise, the ALJ found that Claimant's accident on that date "occurred within the course of and scope of Claimant's employment" and was "the prevailing factor in ... Claimant's need for treatment and the resulting permanent disability suffered by Claimant." The ALJ further found that Employer had actual knowledge of the accident and had such notice within the thirty

2. References to section 287.430 are to RSMo 2000.

days provided by statute, based on Claimant's testimony regarding when and how he informed Employer of his injury, "notwithstanding the fact that Claimant chose to be treated by his private physician." Ultimately, the ALJ awarded Claimant total disability benefits in the amount of $49,434.30: $26,171.10 for temporary total disability and $23,263.20 for permanent partial disability.

Upon Employer's application for review, the Commission affirmed the ALJ's decision and filed a supplemental opinion, which addressed whether Employer received adequate notice of Claimant's injury pursuant to section 287.420. The Commission, in its supplemental opinion, acknowledged that Claimant had not provided Employer with sufficient written notice, as provided for by a strict reading of the statute, and stated that the inquiry must instead focus on whether the remaining language of the statute—"unless the employer was not prejudiced by failure to receive the notice"—was satisfied. Following a recitation of the conflicting testimony of the four witnesses, the Commission expressly found Claimant and his wife to be more credible than Tackitt and Hutchings, respectively. The Commission further found that Claimant himself had "notified the maintenance worker on duty in the shop on May 29, 2006, that he had been injured while working that day[,]" and that Claimant's wife "informed Mr. Hutchings on May 30, 2006, that [Claimant] had been hurt at work, and that Mr. Hutchings should contact [Claimant] if he had questions." Noting that "[i]t is well settled that notice of a potentially compensable injury acquired by a supervisory employee is imputed to the employer[,]" the Commission concluded that Claimant had provided substantial evidence that Employer had actual knowledge of Claimant's work-related injury. Based upon such a show-ing, the Commission outlined the concomitant shift in the relevant burden of proof from Claimant to Employer and found that Employer had failed to meet its resulting burden of proving prejudice. The Commission incorporated the ALJ's opinion to the extent that it was otherwise consistent with the Commission's order. This appeal timely followed.

### Standard of Review

In reviewing a workers' compensation final award, "we review the findings and award of the Commission rather than those of the ALJ." *Birdsong v. Waste Mgmt.*, 147 S.W.3d 132, 137 (Mo.App. 2004). With the exception of whether Claimant provided adequate notice pursuant to section 287.420, however, the Commission affirmed and adopted the findings and conclusions of the ALJ; therefore, on these other issues, we review the ALJ's findings and conclusions, as adopted by the Commission. *See Hawthorne v. Lester E. Cox Med. Ctrs.*, 165 S.W.3d 587, 592 (Mo. App.2005).

This Court shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1.[3] "Whether the award is supported by competent and substantial evidence is judged by examining the evi-

---

**3.** References to section 287.495 are to RSMo 2000.

dence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* Thus, "[o]n a claim that an award is against the weight of the evidence, we examine the evidence in the context of the whole record to determine whether it is supported by competent and substantial evidence." *Fitzwater v. Dep't of Pub. Safety*, 198 S.W.3d 623, 627 (Mo. App.2006). Furthermore, on appeal, "no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding." Section 287.495.1. As such, "we defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Pavia v. Smitty's Supermkt.*, 118 S.W.3d 228, 234 (Mo.App. 2003). However, we review decisions of the Commission that are interpretations or applications of law without deference to the Commission's judgment, *Orr. v. City of Springfield*, 118 S.W.3d 215, 217 (Mo.App. 2003), and review questions of law independently. *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 287 (Mo. banc 1995).

### *Discussion*

 In its sole point relied on, Employer states:

THE LABOR AND INDUSTRIAL RELATIONS COMMISSION ERRONEOUSLY AWARDED BENEFITS AND FUTURE MEDICAL BENEFITS TO [CLAIMANT] BECAUSE ITS CONCLUSION THAT [EMPLOYER] WAS NOT PREJUDICED BY LACK OF WRITTEN NOTICE BECAUSE IT OBTAINED ACTUAL KNOWLEDGE OF THE INJURY IS NOT SUPPORTED BY THE GREAT WEIGHT OF THE EVIDENCE NOR BY CONSTRUING STRICTLY THE PROVISIONS OF THE WORKERS' COMPENSATION STATUTE.

We address Employer's two contentions in this point in reverse order.[4]

### *Strict Construction of Section 287.420 Supports Award*

 The relevant portion of section 287.420 reads:

No proceedings for compensation for any accident under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, has been given to the employer no later than thirty days after the accident, *unless the employer was not prejudiced by failure to receive the notice.*

(Emphasis added). Furthermore, section 287.800.1[5] requires that "[a]dministrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, the division of workers' compensation, and any reviewing courts shall construe the provisions of this chapter strictly."

---

4. We note that Employer's point relied on contains more than one potential basis for reversal: Employer contends that the final award of benefits was erroneous both because it was against the "great weight of the evidence" and because such an award does not comport with a strict interpretation of the applicable statute. Multifarious points relied on are not in compliance with Rule 84.04(d) and preserve nothing for review. *DeCota Elec. & Indus. Supply, Inc. v. Continental Cas.*

*Co.*, 886 S.W.2d 940, 941 (Mo.App.1994). Nevertheless, this Court "may exercise [its] discretion and attempt to resolve issues on their merits unless the defective point impedes disposition of the case on its merits." *Atkins v. McPhetridge*, 213 S.W.3d 116, 120 (Mo.App.2006) (citing *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997)).

5. References to section 287.800 are to RSMo Cum.Supp.2005.

Strict construction means that a "statute can be given no broader application than is warranted by its plain and unambiguous terms." *Harness v. S. Copyroll, Inc.*, 291 S.W.3d 299, 303 (Mo.App.2009). The operation of the statute must be confined to "matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter." *Allcorn v. Tap Enters., Inc.*, 277 S.W.3d 823, 828 (Mo.App.2009) (*citing* 3 Sutherland Statutory Construction § 58:2 (6th ed.2008)). " 'A strict construction of a statute presumes nothing that is not expressed.' " *Id.* (quoting *Sutherland, supra*).

*Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo.App.2010).

It is undisputed that Claimant did not provide Employer with written notice as required by section 287.420. The issue, then, is whether the Commission's award complies with the apparent statutory exception to that requirement—"unless the employer was not prejudiced by failure to receive the notice."

Employer offers two arguments as to how a strict construction of the statute does not support an award of benefits in this case: first, Employer contends that an exception to the required written notice provided by section 287.420 no longer exists following the 2005 amendments to the workers' compensation statutes; and, second, even if such a statutory exception to written notice exists, Claimant did not satisfy it here because the verbal notice he gave his co-worker and his supervisor was not notice to his employer of his injury and, therefore, Employer cannot be found to have had actual notice. Employer premises both of these arguments on the legislature's 2005 revision of the workers' compensation statutes and an implied change, created by such revisions, in the interpretation and application of section 287.420.

In its 2005 revision of the workers' compensation statutes, the legislature enacted significant changes. Section 287.420, while not spared revision in its entirety, however, remained relatively intact. The pre–2005 version read, in pertinent part, as follows, with 2005 additions underlined and excisions stricken through:

No proceedings for compensation *for any accident* under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, ~~have~~ has been given to the employer ~~as soon as practicable after the happening thereof but not~~ *no* later than thirty days after the accident, ~~unless the division or the commission finds that there was god cause for failure to give the notice, or that~~ *unless* the employer was not prejudiced by failure to receive the notice. ~~No defect or inaccuracy in the notice shall invalidate it unless the commission finds that the employer was in fact misled and prejudiced thereby.~~

Notably, the language used in the phrase pertinent to our decision in this case—"unless the employer was not prejudiced by failure to receive the notice"—was not altered either by any change in wording within the phrase or by the addition, deletion, or alteration of any other provisions within the section having an operative effect upon it. While it is well established that a statutory revision is intended to have some effect, "what the legislature intended is to be concluded from the language which it used." *State v. Swoboda*, 658 S.W.2d 24, 26 (Mo. banc 1983) (citing *Bradley v. Elsberry Drainage Dist.*, 425 S.W.2d 950 (Mo.1968)). Here, the language used by the legislature in its 2005 revision of this section was directed to other provisions and requirements within the section but left the phrase at issue intact and in the same grammatical posi-

tion related to the written notice requirement as in the pre–2005 version.

■ In construing this section, we initially turn to section 1.120, RSMo 2000, which provides that: "The provisions of any law or statute which is reenacted, amended or revised, so far as they are the same as those of a prior law, shall be construed as a continuation of such law and not as a new enactment." "This statute is consistent with the general rule that when part of a statute is repealed by an amendatory act, the provisions retained are regarded as a continuation of the former law while those omitted are treated as repealed." *Kelly v. Hanson*, 984 S.W.2d 540, 544 (Mo.App.1998) (quoting *State ex rel. Klein v. Hughes*, 351 Mo. 651, 173 S.W.2d 877, 880 (1943)). The Supreme Court of Missouri has further explained this rule, stating:

> [W]here a statute is amended only in part, or as respects only certain isolated and integral sections thereof and the remaining sections or parts of the statute are allowed and left to stand unamended, unchanged, and apparently unaffected by the amendatory act or acts, it is presumed that the Legislature intended the unamended and unchanged sections or parts of the original statute to remain operative and effective, as before the enactment of the amendatory act.

*Citizens Bank & Trust Co. v. Dir. of Revenue, State of Mo.*, 639 S.W.2d 833, 835 (Mo.1982) (quoting *State ex rel. Dean v. Daues*, 321 Mo. 1126, 14 S.W.2d 990, 1002 (1929)).

■ Furthermore, "[i]n construing a statute a fundamental precept is that the legislature acted with knowledge of the subject matter and the existing law." *Holt v. Burlington N. R.R. Co.*, 685 S.W.2d 851, 857 (Mo.App.1984). In revising the workers' compensation statutes as a whole, the legislature clearly expressed its intent to negate the effects of various cases and their progeny relevant to some of the sections and terms of the workers' compensation chapter.[6] No such actions were directed toward section 287.420, and, particularly, the legislature made no mention of prior cases interpreting the notice exception at issue here. Such an omission signals an intentional acceptance of existing case law governing the unchanged portion of section 287.420.

■ Additionally, it is generally presumed that the legislature did not include superfluous language. *Norwin G. Heimos Greenhouse, Inc. v. Dir. of Revenue*, 724 S.W.2d 505, 508 (Mo. banc 1987). "Each word, clause, sentence and section of a statute should be given meaning." *State ex rel Womack v. Rolf*, 173 S.W.3d 634, 638 (Mo. banc 2005). "Courts will reject an interpretation of a statute that requires ignoring the very words of the

---

6. *See, e.g.,* section 287.020.10, RSMo Cum. Supp.2005 ("In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of 'accident', 'occupational disease', 'arising out of, and 'in the course of the employment' to include, but not be limited to, holdings in: *Bennett v. Columbia Health Care,* 80 S.W.3d 524 (Mo.App. W.D.2002); *Kasl v. Bristol Care, Inc.,* 984 S.W.2d 852 (Mo.banc 1999); and *Drewes v. TWA,* 984 S.W.2d 512 (Mo.banc 1999) and all cases citing, interpreting, applying, or following those cases."); section 287.043, RSMo Cum.Supp.2005 ("In applying the provisions of subsection 1 of section 287.020 and subsection 4 of section 287.040, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of 'owner', as extended in the following cases: *Owner Operator Independent Drivers Ass'n., Inc. v. New Prime, Inc.,* 133 S.W.3d 162 (Mo.App. S.D. 2004); *Nunn v. C.C. Midwest,* 151 S.W.3d 388 (Mo.App. W.D.2004).").

statute." *Id.* Indeed, such an interpretation would fly in the face of a strict construction of the statute.

 As to its first contention, Employer initially notes that pre–2005 case law "allowed for proceedings to continue if the employee showed that the employer had actual knowledge of the injury." From this premise, Employer then argues that the post–2005 version of section 287.420 requires written notice and that a strict construction of that requirement, as mandated by section 287.800, now means that actual notice, which is not expressly provided for by the statute, cannot satisfy the written notice requirement. While Employer argues that "[t]he theory of actual notice would seem to negate the entire section[,]" it ignores the converse inference that its proffered interpretation of section 287.420 would render the words "unless the employer was not prejudiced by failure to receive the notice" meaningless. Notwithstanding the requirement that we utilize the words' ordinary meanings when engaging in statutory interpretation, *Nelson v. Crane,* 187 S.W.3d 868, 869–70 (Mo. banc 2006), Employer fails to offer in its argument any possible interpretations of or use for this phrase in this section; it simply asks us to ignore or otherwise simply read this phrase out of the statute altogether. We, however, are not afforded such a luxury in the face of well-established principles of statutory construction. Employing the ordinary meaning of the applicable phrase, we find that section 287.420 contains an exception to a claimant providing his or her employer with the required written notice when there is no resulting prejudice to the employer; indeed, we are not the first Court to so find. *See Allcorn,* 277 S.W.3d at 831 ("The final sentence of section 287.420 saves a failed attempt at notice if 'the employee can prove the employer was not prejudiced by failure to receive the notice.' ").

 Employer's second contention—actual notice to Tackitt or Hutchings was not notice to Claimant's "employer," as that term is used in section 287.420—is also without merit. In its brief, Employer concedes that "it has been well established that actual knowledge of an employee's supervisor does impute that knowledge unto the employer[.]" *See Dunn v. Hussman Corp.,* 892 S.W.2d 676, 681 (Mo.App. 1994) ("[n]otice or knowledge is imputed to the employer when it is given to a supervisory employee."). Hutchings admitted his status as Claimant's supervisor during the hearing.

Employer, however, then contends that a strict reading of the statute, as now required by section 287.800, disqualifies both Tackitt and Hutchings from classification as an "employer" as defined in section 287.030.1(1).[7] Such a reading of section 287.420 is misguided.

 Employer's argument assumes that section 287.420 expressly provides that any actual notice must be given to the employer, and thus it is the statute's use of the term "employer" in the context of notice that is of paramount concern. The statute, however, merely requires a showing that the employer was not prejudiced by the lack of written notice. Section 287.420. Thus, the statute does not expressly address actual notice or the manner in which an employer can be put on actual notice, but rather, only addresses the ultimate fact as to whether the employer was prejudiced by the lack of timely written notice as otherwise required. Nothing in the statute refers to or addresses in any manner the evidentiary basis necessary to support a finding of lack of prejudice, and thus neither a liberal nor

7. References to section 287.030 are to RSMo 2000.

a strict construction of the statute has any impact upon it. Actual notice to the employer through an appropriate employee is merely one potential evidentiary element appropriate in some cases to provide some evidentiary support for finding a lack of prejudice, i.e., the existence of the explicit and strictly construed exception to the written-notice requirement.

Employer relies heavily on *Robinson*, 323 S.W.3d 418, in support of his interpretation of "employer." *Robinson*, however, deals with the issue of employer immunity and whether a strict construction of the term "employer," as expressly used in section 287.120,[8] includes co-employees within the employer's immunity. *Id.* at 422–25. Such an analysis does not logically extend to the circumstances here and is therefore distinguishable because the Court in *Robinson* was charged with interpreting the actual use of the defined term "employer" in the statute, while in this case the task at hand is an examination of whether Employer was prejudiced by the absence of written notice. There is no dispute that Employer meets the definition of an employer as provided in section 287.030.1(1).

*Robinson* is also distinguishable for another reason. The Western District of our Court in *Robinson* noted that before 2005, the worker's compensation statutes did not expressly provide for co-employee inclusion in the employer's immunity granted by section 287.120, but that such inclusion had been judicially recognized because it "was deemed necessary to 'fix' the Act's omission of agency principles in determining liability for workplace injuries." *Id.* at 423. The Western District recognized that this "judicial construct" must be "re-evaluated based on principles of strict construction" and ultimately concluded that the concept was narrowed by "the new lens of strict construction" to exclude co-employees. *Id.* at 424. Here, Employer has

failed to point us to any pre–2005 judicial construction of the language used in the exception to written notice in section 287.420 that purports to expand that exception beyond those claims where "the employer was not prejudiced by failure to receive the notice." Thus, we have no "judicial construct" before us to re-evaluate based on principles of strict construction of the language in the statute as was before the Court in *Robinson*.

Strict statutory construction demonstrates that section 287.420 contains an exception to the written notice requirement—when the employer is not prejudiced by the failure to receive written notice—and the application of case law related to the evidentiary basis for supporting the factual existence of that exception provides that actual notice to a supervisory employee is imputed to the employer. *See Dunn*, 892 S.W.2d at 681.

### *Lack–of–Prejudice Finding is Supported by Substantial Evidence*

Employer also contends that the Commission's finding that it was not prejudiced by the lack of written notice was against the weight of the evidence in that Claimant did not demonstrate that Employer had actual notice of his injury and, therefore, did not satisfy the exception to the written-notice requirement. We disagree.

The purpose of section 287.420 " 'is to give the employer timely opportunity to investigate the facts surrounding the accident and, if an accident occurred, to provide the employee medical attention in order to minimize the disability.' " *Doerr v. Teton Transp., Inc.*, 258 S.W.3d 514, 527 (Mo.App.2008) (internal quotation omitted). " 'However, the failure to give timely written notice may be excused if the Commission finds ... that the failure did not prejudice the employer.' " *Id.* at 527–28

---

8. References to section 287.120 are to RSMo Cum.Supp.2005.

(internal quotation omitted); Section 287.420. "A claimant may demonstrate lack of prejudice where 'evidence of actual notice was uncontradicted, admitted by the employer, or accepted as true by the fact-finder.'" *Pursifull v. Braun Plastering & Drywall*, 233 S.W.3d 219, 223 (Mo.App. 2007) (quoting *Willis v. Jewish Hosp.*, 854 S.W.2d 82, 85 (Mo.App.1993)). When an employer does not admit actual notice, the issue becomes one of fact. *Doerr*, 258 S.W.3d at 528. This Court reviews issues of fact with deference to the findings of the Commission. Section 287.495.1.

■■■■ Here, the burden of proving Employer's lack of prejudice in not receiving written notice rested on the Claimant. Once Claimant presented substantial evidence that Employer had actual notice of the relevant injury, however, the burden of showing prejudice then shifted to Employer. *Doerr*, 258 S.W.3d at 528. Claimant testified that, shortly after hurting himself, he called and told a maintenance worker—to whom he had been told to report in the absence of his actual supervisor—about the injury; he further testified that, after receiving a doctor's note excusing him from work for the rest of that week, he delivered the note to his supervisor the day after his injury via his wife. Claimant's wife testified that she delivered that doctor's note the day after the accident to Hutchings and that she informed Hutchings at that time that the injury had occurred on the job. Such testimony constitutes substantial evidence supporting that Employer had actual notice of Claimant's workplace injury.

In response, Employer presented the testimony of two individuals: maintenance worker Stephen Tackitt, and Cal Hutchings, Claimant's supervisor. Tackitt testified that although he recalled speaking with Claimant on the day of the accident, he did not recall Claimant mentioning his being in pain or hurting himself at work.

Hutchings testified that he received a doctor's note from Claimant's wife but that he thought he received it much later than May 30, 2006; he denied that Claimant's wife told him that the injury was work related. Hutchings also testified that he heard about Claimant's injury—and that the injury had taken place at work—from another groundskeeper but that he did not ask Claimant about the origin of the injury.

Employer's proffered testimony no doubt contests whether Employer had actual notice of Claimant's injury. To that end, the Commission was forced to make a credibility determination, which it did explicitly:

We resolve the conflicting testimony of the parties as follows. We find the testimony of [Claimant] to be more credible than that of Mr. Tackitt. We find that [Claimant] notified the maintenance worker on duty in the shop on May 20, 2006, that he had been injured while working that day. We find the testimony of [Claimant's] wife to be more credible than that of Mr. Hutchings. We find that [Claimant's] wife informed Mr. Hutchings on May 30, 2006, that [Claimant] had been hurt at work, and that Mr. Hutchings should contact [Claimant] if he had questions.

This Court defers to the Commission's credibility determinations. *Pavia*, 118 S.W.3d at 234. While Employer spends the vast majority of its brief attempting to challenge the credibility of Claimant and his wife, it ultimately acknowledges that we must defer to the Commission on such findings.

Once we determine that substantial evidence supports the finding that Employer had actual notice of Claimant's work-related injury on the day after the accident at the latest, the issue then becomes whether Employer met its burden of showing that it suffered prejudice as a result of Claim-

ant's failure to give written notice of that injury as required by section 287.420. *See Doerr*, 258 S.W.3d at 528. The Commission found that "there is no testimony, nor can we find any other form of evidence in the record, sufficient to demonstrate that [E]mployer was hampered in its ability to investigate the incident, or that [E]mployer was denied an opportunity to minimize [Claimant's] injuries." Absent any such evidence, which we also could not find from our review of the record, the Commission did not err in finding that Employer failed to meet its burden. Thus, its finding that Employer was not prejudiced by failing to receive written notice is supported by substantial evidence in the record as a whole and is not against the weight of the evidence.

Employer's point is denied.

### *Decision*

The Commission's award is affirmed.

BARNEY, P.J., and BURRELL, J., concur.