

# SUPREME COURT OF MISSOURI
## en banc

TREASURER OF THE STATE OF )     *Opinion issued April 29, 2025*
MISSOURI – CUSTODIAN OF THE )
SECOND INJURY FUND, )
  )
    Appellant, )
  )
v. )     No. SC100693
  )
DIANA PENNEY, )
  )
    Respondent. )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

The Treasurer of the State of Missouri as Custodian of the Second Injury Fund (the Fund) appeals the award of permanent total disability (PTD) benefits in connection with Diana Penney's March 2019 primary injury claim. The Fund argues the Labor and Industrial Relations Commission (the Commission) failed to strictly construe section 287.220.3(2)(a)a(ii)[1] (category (ii)) by allowing preexisting occupational diseases to qualify under that subsection. Because category (ii) provides a preexisting disability must be a "direct result of a compensable injury as defined in section 287.020," and section 287.020 encompasses injuries by accident and excludes occupational diseases, this Court

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

holds preexisting occupational diseases do not qualify under category (ii). The Commission's decision is reversed.

## Factual and Procedural Background

Penney worked as a pharmacy technician from 1980 to 2019. Penney's work required her to extensively use her hands by giving out prescriptions, typing on the computer, using the cash register, and screwing and unscrewing prescription bottle lids. Between 2018 and 2019, Penney was diagnosed with three repetitive use (occupational) diseases due to her employment with CVS Pharmacy in Kansas City.

In June 2018, Penney filed a work-related occupational disease claim regarding her low back. Penney attributed this injury to the repetitive activities of working as a pharmacy technician, including unloading and stocking deliveries, which required frequently bending over while lifting products onto shelves. She underwent two surgeries involving multilevel decompression and fusion to her low back. In February 2019, Penney filed another work-related occupational disease claim, this one involving protruding disks in her neck and upper back. The injury arose due to Penney repeatedly pulling orders from overhead while holding the telephone between her neck and shoulder.

In March 2019, Penney filed a final work-related occupational disease claim after she was diagnosed with right carpal tunnel syndrome and ulnar nerve entrapment at the elbow on the left side (the primary injury).[2] Penney had carpal tunnel surgery in October

---

[2] The final "subsequent compensable work-related injury" referred to in section 287.220.3(2)(a)b "is often referred to as the 'primary injury.'" *Treasurer of Mo. v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021).

2019 but continues to have pain and weakness in both hands. Penney stopped working in August 2019 due to pain from the combination of her three work-related occupational diseases. She experiences pain in her low back, arms, neck, shoulders, and hands as well as difficulty sleeping.

Penney sought PTD benefits from the Fund. The matter was heard before an administrative law judge (ALJ), who concluded Penney is permanently and totally disabled as a result of the combined effect of her occupational diseases and determined she is entitled to PTD benefits from the Fund.

The Fund appealed to the Commission, arguing the ALJ improperly considered Penney's two preexisting occupational diseases under category (ii) to conclude she was permanently and totally disabled. The Commission disagreed and affirmed the ALJ's award of PTD benefits.

The Fund appeals, again arguing Penney's occupational diseases cannot qualify as preexisting injuries under category (ii) for purposes of a PTD determination. This Court agrees.

### Standard of Review

"This Court reviews the Commission's findings to determine if they are supported by competent and substantial evidence upon the whole record, but questions of statutory interpretation are questions of law reviewed *de novo*." *Parker*, 622 S.W.3d at 180-81 (quotation omitted). "When interpreting statutes, this Court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Id.* at 181 (quotations omitted). "Insight into the legislature's

3

object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of the enactment." *Bachtel v. Miller Cnty. Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003). This Court must presume the legislature intended every word, clause, sentence, and provision of a statute to have effect. *Hyde Park Housing P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993). "Conversely, it will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute." *Id.* In addition, this Court will not add to a statute words the legislature chose to omit. *Parker*, 622 S.W.3d at 181.

This Court must also strictly construe the provisions of workers' compensation statutes. *Cosby v. Treasurer of Mo.*, 579 S.W.3d 202, 206 (Mo. banc 2019); § 287.800.1.

> Strict construction means that a statute can be given no broader application than is warranted by its plain and unambiguous terms. The operation of the statute must be confined to matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter. A strict construction of a statute presumes nothing that is not expressed.

*Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo. App. 2010) (citations and quotations omitted), *superseded on other grounds by* § 287.120.1.

### Penney's Occupational Diseases Do Not Qualify as Preexisting Disabilities Under Category (ii)

The Fund argues an occupational disease cannot qualify as a preexisting disability under category (ii), which requires the disability to be a "direct result of a compensable injury as defined in section 287.020[.]" § 287.220.3(2)(a)a(ii). The Fund asserts section 287.020 defines only injuries by accident, whereas section 287.067 defines occupational

4

diseases. A brief legislative history of these statutory provisions guides this Court's analysis.

Prior to 2005, workers' compensation statutes were to be liberally construed, and courts often "enlarged" the definition of accidental injury to include occupational disease in the workers' compensation context. *See Staples v. A.P. Green Fire Brick Co.*, 307 S.W.2d 457, 461-62 (Mo. 1957) (collecting cases). In 2005, however, the legislature significantly amended portions of the workers' compensation statutes in several relevant respects.

First, the legislature changed the construction courts must apply to workers' compensation statutes from liberal to strict. *State ex rel. KCP & L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 22 (Mo. App. 2011) (holding it may have been appropriate prior to the 2005 amendments to "liberalize" the definitions of "accident" and "injury" in section 287.020 to include occupational diseases but that such liberal construction was no longer permitted).

In addition, the 2005 amendments substantially modified the standards for compensability of occupational disease claims via amendments to section 287.067, indicating a legislative intent "to divorce the compensability of occupational disease claims from … the statutory provisions which define 'accident' and 'injury.'" *Id.* at 24. Prior to the 2005 amendments, the relevant portion of section 287.067.2, RSMo 2000, provided an occupational disease was compensable if it met the requirements of a compensable injury as provided in subsections 2 and 3 of section 287.020, which defined accidental injury. The 2005 amendments to section 287.067 omitted the reference to section 287.020 and

established "an independent, detailed scheme for the compensation of occupational disease claims." *Cook*, 353 S.W.3d at 25; *see also* § 287.067, RSMo Supp. 2005 ("An injury by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability.").[3] The 2005 amendments, therefore, delineated two different types of "compensable injuries," each with their own scheme to determine compensability – injuries by accident as defined in section 287.020 and injuries by occupational disease as defined in section 287.067. *Cook*, 353 S.W.3d at 18.

Against this backdrop, the legislature again amended the workers' compensation statutes in 2013, creating subsection 3 of section 287.220 to limit the Fund's liability for PTD claims based on work injuries occurring after January 1, 2014. *Parker*, 622 S.W.3d at 181. These amendments were an attempt "to limit the number of workers eligible for fund benefits because the Fund was insolvent." *Id.*

Under subsection 3, a claimant must satisfy certain conditions to make a compensable PTD claim against the Fund. *Klecka v. Treasurer of Mo.*, 644 S.W.3d 562, 566 (Mo. banc 2022). Relevant here, the claimant must have at least one qualifying preexisting disability, which must be medically documented, equal at least 50 weeks of permanent partial disability (PPD), and be a "direct result of a compensable injury as defined in section 287.020[.]" § 287.220.3(2)(a)a(ii).

---

[3] The relevant portion of section 287.067.2 remains substantially similar today to the 2005 version, merely adding "or death" after "injury" such that death by occupational disease is now compensable. *See* § 287.062.2, RSMo Supp. 2024.

This brings the Court to the sole issue in this case – whether Penney's two prior occupational diseases qualify under category (ii) as "compensable injur[ies] as defined in section 287.020[.]" Certainly, after the 2005 amendments divorcing accidental injuries and occupational diseases, the legislature's choice to reference only section 287.020 in category (ii) strongly suggests it intended to limit category (ii) to accidental injuries. Moreover, given the Fund's insolvency issues prior to creating category (ii), the legislature might have reasonably chosen to restrict qualifying preexisting disabilities in this manner to limit the number of workers eligible for benefits. *See Parker*, 622 S.W.3d at 181.

The relevant portions of section 287.020.3 confirm this conclusion:

(1) In this chapter the term "injury" is hereby defined to be an injury which has arisen out of and in the course of employment. ***An injury by accident*** is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability. "The prevailing factor" is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.

….

(5) The terms "injury" and "personal injuries" shall mean violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom. ***These terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form***, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment, nor shall they include death due to natural causes occurring while the worker is at work.

7

(Emphasis added).[4]

Section 287.020 plainly encompasses accidental injuries and sets forth a scheme to determine their compensability, as noted in *Cook*. Most notably, section 287.020.3(5) specifically ***excludes*** occupational diseases by providing "[t]hese terms shall in no case except as specifically provided in this chapter be construed to include occupational diseases in any form."

Penney argues the language "except as specifically provided in this chapter" in section 287.020.3(5) nonetheless brings occupational diseases within the ambit of section 287.020 (and therefore category (ii)) because section 287.067, which is within chapter 287, renders an occupational disease a "compensable injury." The Court declines to follow this logic. As explained above, the statutory framework at issue delineates ***two types*** of compensable injuries: injuries by accident and injuries by occupational disease. While occupational diseases are "compensable" under section 287.067, the legislature chose to limit preexisting injuries that qualify under category (ii) to compensable injuries ***as defined in section 287.020***, the section pertaining to injuries by accident. This Court cannot ignore the legislature's choice to include the bolded language above, which would be rendered superfluous were this Court to accept Penney's argument.

Had the legislature intended to include occupational diseases in category (ii), it simply could have stated as such or referenced section 287.067 in addition to section

---

[4] It is undisputed that Penney's occupational diseases, caused by repetitive motions over long periods of time, are not injuries by accident. Indeed, "[a]n injury due to repetitive motion is recognized as an occupational disease for purposes of this chapter." § 287.067.3.

287.020.  It did not do so.  Under strict construction, this Court cannot give category (ii) broader application than is warranted by its plain terms, which point only to section 287.020.  *Robinson*, 323 S.W.3d at 423.  As such, this Court holds occupational diseases do not qualify as preexisting disabilities under category (ii) and, therefore, cannot be considered in combination with the primary injury to determine whether a PTD resulted.[5]

This Court is not unsympathetic to Penney's case.  She has significant and debilitating disabilities due to nearly 40 years working as a pharmacy technician.  However, whether Penney is permanently and totally disabled and whether she is entitled to PTD benefits from the Fund are "entirely distinct questions."  *Klecka*, 644 S.W.3d at 567.  To show entitlement to Fund benefits, Penney was required to show she had at least one qualifying preexisting injury under category (ii).  Because category (ii) does not encompass preexisting occupational diseases for the reasons expressed above, none of Penney's preexisting repetitive use injuries qualifies and she failed to establish she is entitled to PTD benefits.

---

[5]  The Court notes the legislature has explicitly permitted both occupational diseases and accidental injuries to qualify as the ***primary*** injury.  *See* § 287.220.3(1) ("All claims against the second injury fund for injuries occurring after January 1, 2014, and all claims against the second injury fund involving a subsequent compensable injury which is an occupational disease filed after January 1, 2014, shall be compensated as provided in this subsection.").  Accordingly, the Court takes no issue with the fact that Penney's primary injury is an occupational disease.

## Conclusion

The Commission's decision is reversed.

_____

ROBIN RANSOM, JUDGE

Russell, C.J., Fischer, Broniec and
Gooch, JJ., concur; Powell, J., dissents
in separate opinion filed; Wilson, J.,
concurs in opinion of Powell, J.

10



# SUPREME COURT OF MISSOURI
## en banc

TREASURER OF THE STATE OF        )
MISSOURI – CUSTODIAN OF THE      )
SECOND INJURY FUND,              )
                                 )
    Appellant,   )
                                 )   No. SC100693
v.                               )
                                 )
DIANA PENNEY,                    )
                                 )
    Respondent.  )

## DISSENTING OPINION

I respectfully dissent. The Labor and Industrial Relations Commission ("Commission") correctly determined Diana Penney's prior repetitive-use injuries qualify as preexisting injuries entitling her to benefits from the Second Injury Fund. Accordingly, the Commission's decision should be affirmed.

The legislature created the Second Injury Fund ("Fund") in 1943. 1943 Mo. Laws 1068. The purpose of the Fund is "to encourage the employment of individuals who are already disabled from a preexisting injury, regardless of the type or cause of that injury." *Pierson v. Treasurer of Mo.,* 126 S.W.3d 386, 389-90 (Mo. banc 2004). "It encourages such employment by ensuring that an employer is only liable for the disability caused by a work injury," otherwise known as the primary injury. *Treasurer of Mo.-Custodian of*

*Second Inj. Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013), *superseded by* section 287.220.3, RSMo Supp. 2013. Any disability attributable to and exacerbated by the combination of the primary injury with preexisting disabilities is eligible for benefits from the Fund. *Id.*; *see* section 287.220.1.[1]

The Fund appeals the Commission's decision awarding Penney benefits from the Fund. The Fund claims the Commission erred coming to the legal conclusion that a prior repetitive-use injury qualifies as a preexisting disability, which allows Penney and similarly situated employees to seek benefits from the Fund for any disability attributable to the combination of a primary injury and a preexisting repetitive-use injury.

This issue presents a straightforward question of statutory interpretation. The statutes in question concern the Workers' Compensation Act ("Act"), which provides benefits or compensation to employees who are injured or become ill due to work-related accidents or occupational diseases arising from their employment. "Workers' compensation law is entirely a creature of statute." *Weibrecht v. Treasurer of Mo.*, 659 S.W.3d 588, 592 (Mo. banc 2023) (internal quotations omitted). Like any other statute, "this Court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms" when interpreting the Act. *Id.* (internal quotations omitted). In so doing, "this Court presumes every word, sentence, or clause in a statute has effect, and the legislature did not insert superfluous language." *Swafford v. Treasurer of Mo.*, 659 S.W.3d 580, 583 (Mo. banc 2023) (internal quotations omitted).

---

[1] All statutory references are to RSMo 2016 unless otherwise noted.

The Fund claims repetitive-use injuries, otherwise known as occupational diseases, do not qualify as preexisting disabilities. The Fund acknowledges, however, that occupational diseases are compensable under the Act. In fact, the Fund recognizes Penney's most recent occupational diseases are compensable and qualify as the primary injury triggering Fund liability in this case. The Fund's incongruent treatment of occupational diseases is not only perplexing but also conflicts with the plain and ordinary reading of the relevant statutes.

As the principal opinion recognizes, to trigger Fund liability, a claimant must satisfy certain conditions outlined in section 287.220. Specifically, the following conditions must be met:

a. An employee has a medically documented ***preexisting disability*** equaling a minimum of fifty weeks of permanent partial disability compensation according to the medical standards that are used in determining such compensation which is:

   (i) A direct result of active military duty in any branch of the United States Armed Forces; or

   (ii) ***A direct result of a compensable injury as defined in section 287.020***; or

   (iii) Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and shall not include unrelated preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury; or

   (iv) A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear; and

3

b. ***Such employee thereafter sustains a subsequent compensable work-related injury*** that, when combined with the preexisting disability, as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph, results in a permanent total disability as defined under this chapter . . . .

Section 287.220.3(2)(a) (emphasis added).

Penney sought benefits from the Fund after she was diagnosed with carpal tunnel syndrome and ulnar nerve entrapment – her primary injury. Penney alleged this primary injury, when combined with her two preexisting work-related repetitive-use injuries, rendered her permanently and totally disabled.[2] Penney claimed her primary injury and preexisting disabilities are compensable injuries under the Act entitling her to benefits from the Fund.

Penney is correct. An occupational disease resulting from repetitive use is a "compensable injury" under the Act. Section 287.067 provides:

An ***injury*** due to repetitive motion is recognized as an occupational disease for purposes of this chapter. ***An occupational disease due to repetitive motion is compensable*** only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability.

Section 287.067.3 (emphasis added). This straightforward analysis answers the question posed in this appeal.

---

[2] Both of Penney's preexisting repetitive-use injuries were compensable under the Act, and, accordingly, she received workers' compensation benefits after suffering those injuries. Penney made a workers' compensation occupational disease claim in June 2018 due to repetitive trauma to her lower back, which settled for 12.5 percent permanent partial disability of the body as a whole, and another workers' compensation occupational disease claim in February 2019 due to repetitive trauma to her neck and upper back, which also settled for 12.5 percent permanent partial disability of the body as a whole.

While acknowledging repetitive-use injuries are compensable under the Act and recognizing Penney's occupational diseases are qualifying primary injuries under section 287.220.3(2)(a), the Fund argues those same injuries can never qualify as preexisting disabilities because they are not "compensable injur[ies] as defined in section 287.020." The Fund and the principal opinion contend section 287.020 defines "injury," and, therefore, what is a "compensable injury," differently than section 287.067. Section 287.020.3(5) states:

> The terms **"injury"** and **"personal injuries"** shall mean violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom. These terms shall in no case *except as specifically provided in this chapter* be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of employment, nor shall they include death due to natural causes occurring while the worker is at work.

(Bold in original, bolded italics added). Because section 287.020.3(5) states the term "injury" "shall in no case . . . be construed to include occupational disease in any form . . . ," the Fund and the principal opinion conclude a preexisting occupational disease can never satisfy section 287.220.3(2)(a)a(ii).

But this conclusion ignores an important and critical exception to this provision – "*except as specifically provided in this chapter* . . . ." Section 287.020.3(5) (emphasis added). This language cannot be ignored. This Court must "presume[] every word, sentence, or clause in a statute has effect, and the legislature did not insert superfluous language." *Swafford*, 659 S.W.3d at 583 (internal quotations omitted). The very question

5

presented in this appeal is addressed in "this chapter" of Missouri statutes – chapter 287. Chapter 287 expressly provides that an "occupational disease" is a compensable injury. Specifically, section 287.067.3 states, "An injury due to repetitive motion is recognized as an occupational disease for purposes of this chapter."

Because occupational diseases – including injuries due to repetitive use – are specifically recognized as compensable under section 287.067, the phrase "except as specifically provided in this chapter" allows an occupational disease to qualify as a preexisting disability. It is undisputed Penney's preexisting injuries were otherwise qualified under section 287.220.3(2)(a); therefore, the Commission's decision finding Penney's prior repetitive-use injuries eligible preexisting disabilities under the Act was legally justified and should be affirmed. A straightforward interpretation of the relevant statutory provisions requires this result.[3]

The Fund and the principal opinion attempt to justify ignoring the phrase "except as specifically provided in this chapter" by contending section 287.800 requires the Act to be strictly construed. As the principal opinion notes, the Act was amended in 2005. Prior to

---

[3] Not adopting this straightforward statutory interpretation leads to conflicting and inconsistent outcomes. Concluding an occupational disease cannot qualify as a preexisting injury – but recognizing this same occupational disease is compensable and eligible to be a primary injury triggering Fund liability under section 287.067 – produces incongruous and incompatible results under the Act. Pursuant to the principal opinion's interpretation of section 287.220.3(2)(a), an employee who suffers an "injury by accident" and is subsequently diagnosed with an occupational disease would be eligible for benefits from the Fund, but the same employee who was first diagnosed with same occupational disease and then suffers from the same injury by accident would be ineligible for the same benefits. Such a result is irrational, and the legislature could not have intended such inconsistent results.

6

2005, section 287.800 provided, "All of the provisions of this chapter shall be *liberally construed* with a view to the public welfare . . . ." *See* section 287.800, RSMo 2000 (emphasis added). In 2005, however, this language was repealed and replaced with the following: "Administrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, the division of workers' compensation, *and any reviewing courts* shall *construe the provisions of this chapter strictly*." Section 287.800 (emphasis added).[4]

On the basis of this legislative about-face that now commands strict construction of chapter 287, the principal opinion suggests this Court must reverse the Commission's legal conclusion and hold an occupational disease can never qualify as a preexisting disability.[5] But section 287.800 and strict construction do not give this Court license to ignore other statutory language the legislature has carefully chosen. "Neither an instruction to employ 'strict construction' nor one to employ 'liberal construction' can authorize this Court to add or subtract words from a statute or ignore the plain meaning of the words that are there." *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 68 n.5 (Mo. banc 2018). As both the principal opinion and the Fund point out, strict construction simply means "a

---

[4] It is worth noting the same 2005 amendments that added the "strict construction" admonition to section 287.800 *also* added section 287.067.3, which provides that occupational diseases, including repetitive-use injuries, are compensable injuries eligible for workers' compensation benefits. *See* Senate Bill No. 1 (2005).

[5] Such a legislative command – instructing this Court in the method and manner by which the Court interprets the very legislation the legislature enacts – invokes a curious constitutional question over the separation of powers. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). This important question, however, need not be resolved in this case.

7

statute can be given no broader application **than is warranted by its plain and unambiguous terms**.” *Sell v. Ozarks Med. Ctr.*, 333 S.W.3d 498, 507 (Mo. App. 2011) (emphasis added) (internal quotations omitted). “In the end, when the intent of the legislature can be ascertained from the plain and ordinary meaning of the statutory language, the Court is bound to give the statute that construction.” *Dickemann*, 550 S.W.3d at 68 n.5. In fact, “‘[c]ourts will reject an interpretation of a statute that requires ignoring the very words of the statute.’ Indeed, such an interpretation would fly in the face of a strict construction of the statute.” *Sell*, 333 S.W.3d at 508-09 (quoting *State ex rel. Womack v. Rolf*, 173 S.W.3d 634, 638 (Mo. banc 2005)).

Strict construction does not authorize this Court to disregard the plain and unambiguous language of a statute. The legislature may have intended to sharply limit employee eligibility to workers’ compensation benefits when it amended provisions of the Act, but this legislative intention does not give courts carte blanche discretion to ignore express statutory directives. The plain and unambiguous language of the relevant statutes – regardless of whether they are “strictly” or “liberally” construed – does not immunize the Fund from liability when an employee’s preexisting injury is an occupational disease. Because repetitive-use injuries are expressly compensable under the workers’ compensation statutes, Penney’s prior occupational diseases qualify as preexisting disabilities and, combined with her primary injury, entitle Penney to benefits under the Fund. For these reasons, I respectfully dissent.

_____
W. Brent Powell, Judge

8